**Jose de JESUS BENAVIDES,
Plaintiff–Appellant,**

v.

**Mario SANTOS, Jr., Etc., et al.,
Defendants–Appellees.**

**Mario HERRERA and Wife, Rosalinda
Herrera, Plaintiffs–Appellants,**

v.

**Mario SANTOS, Jr., Etc., et al.,
Defendants–Appellees.**

**Nos. 88–2620, 88–2730.**

United States Court of Appeals,
Fifth Circuit.

Sept. 18, 1989.

George Scharmen, San Antonio, Tex., for plaintiff-appellant, Jose de Jesus Benavides.

R. Gaines Griffin, San Antonio, Tex., Olivero E. Canales, Laredo, Tex., for defendants-appellees.

Mayo J. Galindo, Earl W. Tracy, Jr., San Antonio, Tex., for plaintiffs-appellants-Herrera.

Before RUBIN, KING, and GARWOOD, Circuit Judges.

GARWOOD, Circuit Judge:

Plaintiffs-appellants Jose de Jesus Benavides (Benavides), and Mario and Rosalinda Herrera (collectively Herreras) appeal the district court's dismissal of their complaint under Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted. Defendants-appellees are Mario Santos, Jr. (Sheriff Santos), Sheriff of Webb County, Texas, as well as the County Commissioners and County Judge of Webb County.

A motion to dismiss for failure to state a claim should not be granted unless it clearly appears that the plaintiff would not be entitled to recover under any set of facts that could be proved in support of the claim alleged. *Cook & Nichol, Inc. v. Plimsoll Club*, 451 F.2d 505, 506 (5th Cir.1971). In making this determination, the court must consider only the facts alleged in the pleadings and accept them as true. *Hogan v. City of Houston*, 819 F.2d 604 (5th Cir. 1987). On this basis, we examine the following facts. On February 3, 1986, several inmates in the Webb County Jail (located in Laredo, Texas) attempted to escape. In the course of this effort, one of the inmates shot and killed Jose Gerardo Herrera, the son of the Herreras, and seriously injured Benavides. Both Jose Herrera and Benavides were jail detention officers employed by Sheriff Santos. They were on official duty and were unarmed when they were attacked.[1] Though they were attacked and injured by the inmates, their complaint charges that the defendants also bear responsibility. In summary, the complaint contends:

(1) that Sheriff Santos was aware of a persistent pattern of contraband smuggling into the Webb County Jail;

(2) that the Drug Enforcement Administration (DEA) had specifically warned Sheriff Santos on January 20, 1986, that "a jailbreak was imminent";

(3) that Sheriff Santos, "callously and in utter disregard for the security and safekeeping of the jail and its detention officers," did nothing in response to these problems; and

(4) that the Webb County Commissioners and County Judge failed to appropri-

---

1. The Laredo SWAT team prevented the prisoners' escape. The inmate who killed Herrera was sentenced to death.

ate sufficient funds to the jail to ensure its safe operation.

Although the Herreras and Benavides allege a number of constitutional violations, this appeal is confined to 42 U.S.C. § 1983 and the due process provisions of the Fourteenth Amendment.

## Discussion

The issue presented is whether those who, in the course of their duties as local jail detention officers, are injured by jail inmates attempting to escape, have a section 1983 claim against the government officials in charge of the jail where the injury would not have occurred but for those officials' callous indifference or grossly negligent failure to prevent, or to adequately guard against, or to protect those injured from, the attempted escape and accompanying inmate violence.

The Supreme Court has recently addressed a closely analogous issue in *DeShaney v. Winnebago County Dep't of Social Services*, — U.S. —, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989). There, the county department of social services and several governmental social workers had become aware that a child had been the subject of repeated abuse by his father. Although the department took limited steps to protect the child, it did not act to remove him from his father's custody. Soon thereafter, the father beat the child so brutally that he became severely retarded. *Id.* 109 S.Ct. at 1001–02. In determining whether the department was liable under 42 U.S.C. § 1983 and the due process clause of the Fourteenth Amendment, the Court emphasized that the Constitution is a charter of negative liberties, and that the Fourteenth Amendment was intended "to protect the people from the State, not to ensure that the State protected them from each other." *Id.* at 1003. While noting that the facts of the case were "undeniably tragic," *id.* at 1001, the Court held that "[a]s a general matter, ... a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *Id.* at 1004.

*DeShaney* confirms the rationale of several of our similar recent cases. For instance, in *Hogan v. City of Houston*, 819 F.2d 604 (5th Cir.1987), the complaint alleged that certain policies of the City of Houston's prisoner intake facility allowed a prisoner to grab an officer's gun and shoot the plaintiff and that "the City's policies 'manifest deliberate indifference to or conscious disregard' for the safety of its officers and establishes 'gross negligence and recklessness' on the part of the City and Chief of Police Lee Brown." *Id.* We held that the complaint failed to state a section 1983 cause of action, noting that " 'the City's failure to redress the patent but possibly severe defects in [the plaintiff's] workplace [cannot be viewed] as an abuse of government power.' " *Id.* at 605. Similarly, in *Rankin v. City of Wichita Falls, Texas*, 762 F.2d 444 (5th Cir.1985), we held that the parents of a deceased worker failed to state a section 1983 cause of action, where their complaint alleged that the worker's death was due to "gross negligence" in the city's operation of a sewage treatment plant. *Id.* at 446–47. *Rankin* observes that "[o]ne does not state a constitutional claim under section 1983 merely by alleging extraordinary negligence; one must allege 'the sort of abuse of government power that is necessary to raise an ordinary tort by a government agent to the ... [status] of a violation of the Constitution.' " *Id.* at 447.

The District of Columbia and Seventh Circuits have also reached the same result in cases almost identical to the one currently before us. In *Washington v. District of Columbia*, 802 F.2d 1478, 1479 (D.C.Cir. 1986), and in *Walker v. Rowe*, 791 F.2d 507, 509 (7th Cir.), *cert. denied*, 479 U.S. 994, 107 S.Ct. 597, 93 L.Ed.2d 597 (1986), the courts were confronted with situations where inmates had killed or injured prison guards, and where the guards (or their estates) had alleged, as in the present appeal, that prison officials had adopted inadequate procedures that ultimately failed to prevent prisoners from procuring weapons. While the procedures adopted in both of the involved prisons were undoubtedly inadequate, both courts held that the reckless failure of state officials to remedy

unsafe prison conditions did not deprive a prison guard of an interest protected by the Fourteenth Amendment.[2] *Washington,* 802 F.2d at 1481 ("reckless failure"); *Walker,* 791 F.2d at 509 ("grossly negligent" failure, which defendants "knew ... increased the risk of injury" but "after full deliberation did nothing"). Section 1983 does not federalize tort law. While reckless or grossly negligent conduct by government officials in charge of prisons may cause injury to prison guards by third persons, a claim against the officials on that basis falls "squarely within traditional state tort law." *Washington,* 802 F.2d at 1480.[3] Although these cases seem to present an anomaly in that they appear to afford greater protection to prisoners than to prison guards, the affirmative duty to protect a prisoner (as well as a mental patient or other incarcerated person) arises only because of and "when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself." *DeShaney,* 109 S.Ct. at 1005. By contrast, prison guards are employees who "enlisted, on terms they found satisfactory, and [who] were free to quit whenever they pleased." *Washington,* 802 F.2d at 1482; *Walker,* 791 F.2d at 511. We applied the same rationale in *Rankin* when we noted that the plaintiffs' decedent's "association with the [defendant city's] treatment plant is not alleged to have been any less voluntary than his relationship with a private employer would have been." *Id.,* 762 F.2d at 449.[4]

This is not to say plaintiffs have no remedy against the Webb County officials. Instead, our decision merely restates the principle that there is a significant distinction between a tort and a *constitutional* wrong. *Hull v. City of Duncanville,* 678

F.2d 582, 584 (5th Cir.1982). We hold only that plaintiffs have no section 1983 claim. We make no comment as to the potential success or failure of a state law cause of action.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.

---

2. In *Walker,* the case went to trial and the jury awarded the guards approximately $850,000. *Washington,* like the present case, was dismissed for failure to state a claim. Despite this difference, analysis of the primary issue is identical.

3. At least this is so where the officials' conduct is not for the actual purpose or with the actual intent of bringing about injury to the guards in the sense that, absent such purpose or intent,

the complained of conduct (or failure to act) would not have occurred. No such actual purpose or intent of defendants to injure the detention officers is suggested here.

4. It is immaterial for this purpose that jail regulations may have prevented the detention officers from carrying firearms or required them to be present at certain locations or the like; the guards were nonetheless free to quit. Nothing suggests any claim to the contrary.