Myra Jo COLLINS, Plaintiff–Appellant,

v.

The CITY OF HARKER HEIGHTS, TEXAS, Defendant–Appellee.

No. 89–8029.

United States Court of Appeals, Fifth Circuit.

Nov. 2, 1990.

Sanford Ray Rosen, San Francisco, Cal., Don Busby, Busby & Associates, P.C., Temple, Tex., for plaintiff-appellant.

Roy Lee Barrett, Stuart G. Smith, Naman, Howell, Smith & Lee, Waco, Tex., for defendant-appellee.

Before WISDOM, DAVIS, and BARKSDALE, Circuit Judges.

BARKSDALE, Circuit Judge:

Myra Jo Collins appeals the Fed.R.Civ.P. 12(b)(6) dismissal of her § 1983 action, which alleges that the failure of the City of Harker Heights, Texas, to adequately train its employees was a policy of deliberate indifference to her deceased husband's constitutional rights. Pursuant to controlling Fifth Circuit precedent, because an abuse

1. Collins also pleaded state law claims.

of government power is not implicated, a § 1983 action does not lie. Accordingly, we AFFIRM.

## I.

According to Collins' complaint, her husband began working in July 1988, for the City in its sanitation and sewer department, including entering sewer mains through manholes when there was a sewer line problem. In October 1988, as instructed, he entered a manhole to clear a line and died of asphyxia before he could be removed.

Collins alleged that: her husband's death was caused by the City's policy of not providing safety training to its employees; there was a custom for safety equipment to either not be taken to, or used at, the job site; no warnings or instructions were given on the hazards in entering sewer lines or how to protect against them; several months before her husband's death, his supervisor entered a manhole and was rendered unconscious, placing the City on notice of the risks in sending its employees into the lines; the City systematically and intentionally failed to provide the equipment, training or instruction required by the Texas Hazard Communication Act; and, *inter alia*, this pattern of behavior by the City was a custom and policy of deliberate indifference to the Fifth and Fourteenth Amendment rights of its employees.[1]

The district court granted a Rule 12(b)(6) dismissal, expressly taking into consideration the applicable causation standard ("deliberate indifference to constitutional rights") set by *City of Canton v. Harris*, 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989), but noting that an "abuse of governmental power" was lacking, stating first:

The question of a government policy demonstrating deliberate indifference toward the rights or well being of its citizens through a failure to train is normally dealt with in an entirely different context. Usually the issue is associated

with decisions made by law-enforcement, prison or social services officials. In this case the deceased was not in the custody of the [City], he was an employee.

(Citations omitted.) It next ruled that a municipality's improper action against its employee does not constitute *ipso facto* deprivation of a constitutional right; and held that because a constitutional right had not been violated, an action under § 1983 could not lie.

## II.

■ The question presented in this case is whether a plaintiff seeking recovery under § 1983 for injury to a governmental employee must demonstrate, *inter alia,* that the conduct in issue was an abuse of *governmental* power. More particularly, does alleged wrongful conduct by government—in its capacity as employer rather than as a governing authority—that deprives its employee of an alleged constitutional right give rise to a § 1983 action? We base our holding on the abuse of government power standard, separate from the constitutional deprivation element or standard. The district court appears to have merged those two standards, which are among those necessary for bringing § 1983 into play here. In reviewing this Rule 12(b)(6) dismissal, we will keep them separate.[2]

> Section 1983 provides in relevant part: Every person who under color of any statute, ordinance, regulation, custom or usage, of any state ... subjects or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, ... secured by the Constitution and laws, shall be liable to the party injured in an action at law....

42 U.S.C. § 1983. In *Monell v. Dep't of Social Servs.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the Supreme Court held that a § 1983 action could lie against a municipality only where it "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers," or where "constitutional deprivations [occurred] pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision making channels." *Id.* at 690–91, 98 S.Ct. at 2035–36.

■ Earlier, in *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), the Court rejected the idea that "the Due Process Clause of the Fourteenth Amendment and § 1983 make actionable many wrongs inflicted by government employees which had heretofore been thought to give rise only to state-law tort claims." *Id.* at 699, 96 S.Ct. at 1159. Furthermore, mere negligence is insufficient to establish municipal liability under § 1983. *Daniels v. Williams,* 474 U.S. 327, 330–31, 106 S.Ct. 662, 664–65, 88 L.Ed.2d 662 (1986).

■ As stated fairly recently by the Supreme Court in the above-cited *City of Canton, Ohio v. Harris,* the "first inquiry in any case alleging municipal liability under § 1983 is ... whether there is a direct causal link between a municipal policy or custom, and the alleged constitutional deprivation." 109 S.Ct. at 1203. *City of Canton* concerned a § 1983 action for violation of an alleged Fourteenth Amendment right to receive proper medical attention while in post-arrest police custody, arising in part out of inadequate training of the custodial police officers concerning when to summon medical care for a detainee. For such failure to train cases, the Supreme Court noted there was "substantial division among the lower courts as to what *degree of fault* must be evidenced by the municipality's inaction before liability will be permitted" and held that "inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of

---

2. Of course, in reviewing the dismissal, we must accept as true all well-pleaded averments and view them in the light most favorable to the plaintiff; "[w]e may uphold ... [a Rule 12(b)(6) dismissal] only if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations." *Baton Rouge Bldg. and Constr. Trades Council v. Jacobs Constructors, Inc.,* 804 F.2d 879, 881 (5th Cir.1986); *see also Rankin v. City of Wichita Falls,* 762 F.2d 444, 446 (5th Cir.1985).

persons with whom the police come into contact." *Id.* at 1204 (emphasis by Court).

*City of Canton* does not permit all municipal failure to train actions to lie under § 1983, as is reflected by the Court's restatement of its holding:

> Consequently, while claims such as [the detainee's]—alleging that the city's failure to provide training to municipal employees resulted in the constitutional deprivation she suffered—are cognizable under § 1983, they can only yield liability against a municipality where that city's failure to train reflects deliberate indifference to the constitutional rights of its inhabitants.

*Id.* at 1206. *City of Canton* arises out of the use, or abuse, of government power; the holding springs from a citizen being held in custody after arrest, without the ability to control or choose a necessary course of action and being dependent upon the government to do so. The holding establishes only the degree of fault that must be alleged and proved in § 1983 actions against a municipality in certain failure to train cases; it does not hold that all such cases alleging the requisite causation lie under § 1983. In this Circuit, there is a separate standard that must also be satisfied—an abuse of government power. While this element is in many ways similar to, and often blends with, other necessary elements for a § 1983 action, such as deprivation of a constitutional right, and springs

from the same sources as the deprivation element, it is separate nonetheless.

Keeping these standards in mind, we turn to Collins' complaint, in which she makes the requisite *Monell* and *City of Canton* allegations, charging that the City's "custom and policy of deliberate indifference towards the safety of its employees" violated the constitutional rights of her deceased husband. This notwithstanding, our holding is grounded in the abuse of power standard, which pertains to the decedent's relationship with the City— one of employer and employee, rather than one in which the City, as government, acted against the decedent, as governed. Therefore, it is not necessary to reach another of the standards, or elements, necessary for a § 1983 action—whether there was a deprivation of a constitutional right.[3]

Collins contends that pursuant to *City of Canton,* her claim is sufficient to withstand Rule 12(b)(6) dismissal. But, as discussed above, Collins reads too much into *City of Canton.* It pertained to cases concerning use of governmental power on the governed, to government qua government, consistent with the reminder in *Daniels* that

> [o]ur Constitution deals with the large concerns of the governors and the governed, but it does not purport to supplant traditional tort law in laying down rules of conduct to regulate liability for injuries that attend living together in society.

---

**3.** For such deprivation, the complaint alleges that the decedent "had a constitutional right to be free from unreasonable risks of harm to his body, mind and emotions and a constitutional right to be protected from the City['s] ... custom and policy of deliberate indifference toward the safety of its employees"; that the obvious need for proper training and use of safety equipment, especially as mandated by the Texas Hazard Communication Act, Tex. Health & Safety Code Ann. § 502.001 et seq. (Vernon 1990), and the concomitant failure to do so, "result[ed] in the violation of an employee's constitutional rights—the right to be free from harm and injury resulting in death." In her initial brief, Collins contends, for example, that "a public employee enjoys a life or liberty interest in freedom from unsafe working conditions"; that the Texas Hazard Communication Act, by "confer[ring] on public as well as private employees the right to be free from hazardous, unsafe

working conditions," has "create[d] affirmative rights for all employees in the State of Texas, including municipal employees, ... a liberty interest in a work place free of the very hazards to which the decedent succumbed"; that "[i]t is well-established that deprivation of a liberty interest created by state statute constitutes a violation of the due process clause of the Fourteenth Amendment, which may be redressed under Section 1983"; and that therefore, "[p]ublic employees in the State of Texas.... have a substantive due process liberty interest in a safe workplace." *See, e.g., DeShaney v. Winnebago County Dept. of Soc. Servs.,* 489 U.S. 189, 109 S.Ct. 998, 1003 n. 2, 103 L.Ed.2d 249 (1989) (issue raised but not considered). At oral argument, Collins' counsel stated that this right to a safe workplace was the equivalent of a substantive due process right to life. Because we do not reach this issue, we express no opinion on it.

We have previously rejected reasoning that "'would make of the Fourteenth Amendment a font of tort law to be superimposed upon whatever systems may already be administered by the states,'" *Paul v. Davis,* 424 U.S. 693, 701 [96 S.Ct. 1155, 1160, 47 L.Ed.2d 405] (1976), quoted in *Parratt v. Taylor,* 451 U.S. [527], at 544 [101 S.Ct. 1908, 1917, 68 L.Ed.2d 420].

474 U.S. at 332, 106 S.Ct. at 665. Collins has received payments pursuant to the worker's compensation law of Texas;[4] and we express no opinion whether she might have a cause of action under state law.[5] In any event, and as held repeatedly in controlling precedent in this Circuit, she does not have a § 1983 claim against the City. Such precedent is found, for example, in *Rankin v. City of Wichita Falls,* 762 F.2d 444 (5th Cir.1985); *Hogan v. City of Houston,* 819 F.2d 604 (5th Cir.1987); and *de Jesus Benavides v. Santos,* 883 F.2d 385 (5th Cir.1989) (rendered after *City of Canton* and *DeShaney v. Winnebago County Dept. of Social Services,* 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989)).

In *Rankin,* a situation tragically similar to the case at hand, a municipal water treatment plant employee drowned while attempting to save another who had fallen into one of the tanks. The action against the city charged that work site safety defects constituted a municipal custom and practice which caused a deprivation of a constitutional right. This court affirmed the dismissal of the complaint for failing to state a claim under § 1983. Because the case predated *City of Canton's* fixing the causation standard, the court assumed that the complaint sufficiently alleged conduct to meet "whatever standard ... is necessary to state a constitutional claim under section 1983." 762 F.2d at 447.

However, the court explained that simply alleging, or meeting, a causation standard for cases such as this is not enough to permit an action under § 1983.

While some degree of government 'fault' is necessary to state a claim under the Constitution, to predicate liability under section 1983 totally on the mere degree of fault would be to convert the due process clause into an ordinary tort statute and to lose sight of the fact that section 1983 is directed at the abuse of power made possible only because the wrongdoer is clothed in the authority of state law.

*Id.* at 447–448. Accordingly, the court found possible § 1983 liability wanting, "because the existence of the alleged work place defects ... did not amount to a misuse of government power...." *Id.* at 449. The court further explained this controlling distinction:

The City acted in this case in a role essentially indistinguishable from the role of a private employer; accordingly, we cannot view the City's failure to redress the patent but possibly severe defects in [the decedent's] workplace as an abuse of government power. [The decedent's] association with the treatment plant is not alleged to have been any less voluntary than his relationship with a private employer would have been. This is not a case in which the government has exercised its power to incarcerate a citizen thereby making him dependent on the care of the state, nor are state representatives alleged to have violated the special obligation of government to refrain from intentional violations of constitutional rights.

*Id.* at 449. The court held that "the plaintiffs have made out at most the abuse of power which any private employer might be guilty, *not the abuse of any particular authority or obligation held by the government"*; that the injury must "be attributed to a misuse of power made possible only because the City is clothed with authority of state law." *Id.* at 447, 449

---

4. Needless to say, the receipt of such payments, evidenced, for example, by an affidavit filed with the City's Rule 12 motion, has no bearing on whether under Rule 12(b)(6), a § 1983 action can lie in this instance.

5. The dismissal included her pendent state law claims.

(emphasis added).[6]

In *Hogan v. City of Houston*, 819 F.2d 604 (5th Cir.1987), also rendered before *City of Canton*, a police officer alleged that city policies allowed a prisoner to seize another officer's gun and shoot the plaintiff officer; that these policies "manifest[ed] deliberate indifference to or conscious disregard" for his safety. This court affirmed the Rule 12(b)(6) dismissal by applying the *Rankin* holding that the complaint failed to allege the requisite abuse of government power.

And, in *de Jesus Benavides v. Santos*, 883 F.2d 385 (5th Cir.1989), decided after *City of Canton*, this court applied the *Rankin* analysis to a § 1983 claim by jail detention officers, injured by inmates during an attempted escape. In doing so, it also applied similar decisions from other Circuits and the then recent decision by the Supreme Court in *DeShaney*, handed down only six days before *City of Canton*. *DeShaney* involved a § 1983 action against a governmental entity and its employees (the government) for child abuse injuries; it was alleged that the government's failure to protect the child from his custodial father constituted a Fourteenth Amendment substantive due process violation. Although, obviously, *DeShaney* did not involve the employment relationship in issue here, it is applicable because it holds that not all injuries arising out of an association or relationship with the government give rise to a § 1983 claim, even if all other elements for that claim are present.

One contention in *DeShaney* was that because the government was aware of the danger to the child and took some action to protect him, it acquired a duty to do so in a proper manner, and the failure to do so was an abuse of governmental power that constituted a substantive due process violation. In rejecting the contention, the Court noted it was "true that in certain limited circumstances the Constitution imposed upon the [government] affirmative duties of care and protection with respect to particular individuals," but this arose only

> when the [government] takes a person into its custody and holds him there against his will, [it is then that] the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being. The rationale for this principle is simple enough: when the [government] by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs—*e.g.*, food, clothing, shelter, medical care, and reasonable safety—it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause.... In the substantive due process analysis, it is the [government's] affirmative act of restraining the individual's freedom to act on his own behalf—through incarceration, institutionalization, or other similar restraint of personal liberty—which is the 'deprivation of liberty' triggering the protections of the Due Process Clause, not its failure to act to protect his liberty interests against harms inflicted by other means.

109 S.Ct. at 1004–1006 (citations omitted).

Accordingly, this court stated in *Benavides* that *DeShaney* "confirm[ed] the rationale of several of our similar recent cases," including *Rankin* and *Hogan*. 883 F.2d at 387. Based upon the facts in *Benavides*, this court noted that

> prison guards are employees who "enlisted, on terms they found satisfactory, and [who] were free to quit whenever they pleased." *Washington [v. District of Columbia]*, 802 F.2d [1478, 1482 (D.C. Cir.1986) ]; *Walker [v. Rowe,]* 791 F.2d [507, 511 (7th Cir.), *cert. denied,* 479 U.S. 994 [107 S.Ct. 597, 93 L.Ed.2d 597] (1986) ]. We applied the same rationale in *Rankin* when we noted that the plain-

---

**6.** In addition to relying on *City of Canton*, Collins attempts to distinguish *Rankin* because it did not address whether the regulations allegedly violated by the municipality created a constitutional right. As discussed earlier, including in note 3, this argument does not concern the controlling issue in this case, abuse of government power; it concerns a separate issue or standard—deprivation of a constitutional right—that we do not reach.

tiffs' decedent's "association with the [defendant city's] treatment plant is not alleged to have been any less voluntary than his relationship with a private employer would have been."
883 F.2d at 388.

Collins contends that the determinative factor making this a proper post-*City of Canton* § 1983 action is simply that the defendant is *"a governmental body"* (emphasis by Collins); that we should "not . . . focus on the relationship between the public entity and the injured or deceased person"; that the alleged deliberate indifference, without more, constitutes the necessary "abuse of governmental authority"; and that the strict, or high, causation standard fixed by *City of Canton* removes the concerns that lead to establishing the abuse of government power standard. As part of, or alternative to, her contention that the abuse of government power standard employed by *Rankin* and other cases was replaced, or subsumed, by the *City of Canton* causation standard, Collins asserts that even if an abuse of government power must be alleged, she has done so sufficiently for Rule 12(b)(6) purposes, relying, in part, on the recent Eighth Circuit holding in *Ruge v. City of Bellevue*, 892 F.2d 738 (8th Cir.1989).[7]

In *Ruge*, the § 1983 action alleged that the City had a deliberate policy of not shoring ditches and required employees to work in them without warning of such danger. For Rule 12(b)(6) dismissal, the city urged the court to apply the reasoning from *Rankin* and *McClary v. O'Hare*, 786 F.2d 83 (2nd Cir.1986), "that in an employ-

er-employee relationship where the plaintiff fails to show the state conduct complained of was of a 'uniquely governmental character' there is no abuse of government authority and thus no improper state action." 892 F.2d at 741.

The *Ruge* court, however, distinguished *McClary*, ruling that *McClary* held instead that the death "was not caused by any established state procedure and therefore did not constitute a constitutional deprivation."[8] *Id.* The *Ruge* court discussed, but did not attempt to distinguish, *Rankin*.

*Ruge* reversed the Rule 12(b)(6) dismissal, holding that "an abuse of government authority arises sufficient to state a cause of action under section 1983," when a death, including of a municipal employee, "is caused by an inadequate municipal policy, adopted with the requisite culpability." *Id.* at 741 n. 6. In so holding, the court stated:

> However, where the state simply commits a tort, there is no misuse of government power when "the event, however tragic, was an accident neither the occurrence of which nor the particular victim of which could have been predicted." *McClary*, 786 F.2d at 87. We deem a policy, if adopted and proven, that would show a city *actively pursued* conduct which was deliberately indifferent to the constitutional rights of its citizens, would reach constitutional dimensions and be actionable under the Civil Rights Act. *See City of Canton*, 109 S.Ct. at 1204.

*Id.* at 742 (emphasis added).

We are unable to find sufficient shades of difference with the *Ruge* holding to al-

---

**7.** Although Collins did not expressly plead an abuse of government power, or plead to the effect that the City's conduct was of a unique governmental character, we find for purposes of our discussion and in light of our standard of review for Rule 12(b)(6) dismissals that this necessary element for a § 1983 action of this type was pleaded sufficiently. But, the controlling and distinguishing factor is that even assuming abuse of government power was pleaded by implication, it cannot be present under any allegation in this action.

**8.** Without expressing an opinion on the *McClary* holding, we do note that the *McClary* court stated:

> Although we hold that reckless acts of a government employer that harm employees

do not give rise to a substantive due process violation as long as the challenged conduct is not *uniquely governmental in character*, we by no means intend to exclude grossly negligent, reckless, or intentional abuses of *governmental* authority from the purview of section 1983. (Citations omitted). Nor do we view this decision as a grant of immunity to government employers acting as such. Where harms caused by government employers to their employees are attributable to the abuse of the government's authority rather than to an ordinary tort, such harms would continue to be actionable under § 1983.

786 F.2d at 89 n. 6 (emphasis added).

low us to not find it in conflict with our controlling precedent.[9] *Ruge* might compel finding here that the alleged municipal policy is an abuse of government authority or, stated differently, conduct that was of a "uniquely government character," sufficient to preclude Rule 12(b)(6) dismissal. We respectfully disagree. Furthermore, we are bound by our controlling Fifth Circuit precedent. As demonstrated, it has not been changed by a Supreme Court decision; in fact, it is solidified by that Court's decisions.[10]

There was no abuse of government power. This is not an instance "when the state by the affirmative exercise of its powers so restrains an individual's liberty that it renders him unable to care for himself." *De-Shaney*, 109 S.Ct. at 1005. It is "not a case in which a government official, because of his unique position as such, was able to impose a loss on an individual." *McClary*, 786 F.2d at 89. Nor was there "a misuse of power made possible only because the City [was] clothed with authority of state law." 762 F.2d at 449. Accordingly, this action cannot lie under § 1983.

## III.

The judgment of the district court is

AFFIRMED.

---

**9.** As emphasized in the passage quoted above, one difference might be its seeming to include the requirement that the city "actively pursue" deliberately indifferent conduct. 892 F.2d at 742.

**10.** Because our holding is mandated by controlling Fifth Circuit precedent, and because *Ruge*, not this court, created an inter-circuit conflict, we have not sought en banc consideration by this court prior to rendering this opinion.