United States Court of Appeals
Fifth Circuit

**F I L E D**

**March 27, 2006**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

––––––––––––––

No. 04-50774

––––––––––––––

RICARDO RIOS, II; MARISELA RIOS,
Individually and as next friend
of their minor children, Ricardo
Rios III, Laura Yvette Rios and
Ivn Alejandro Rios,

                              Plaintiffs-Appellees,


        versus


THE CITY OF DEL RIO, TEXAS; ET AL,

                              Defendants,


WESLEY WILSON; MANUEL HERRERA,

                              Defendants-Appellants.


––––––––––––––

Appeal from the United States District Court
for the Western District of Texas

––––––––––––––


Before GARWOOD, SMITH and DEMOSS, Circuit Judges.

GARWOOD, Circuit Judge:

     This is an appeal from the denial of a motion to dismiss on

the basis of qualified immunity.

Ricardo Rios II (Rios), joined by his wife and minor children, filed this suit in November 2003 against the City of Del Rio, Texas, its Chief of Police Manuel Herrera (Herrera), and its police officer Wesley Wilson (Wilson), seeking to recover, under 42 U.S.C. § 1983 and state law, damages for personal injuries sustained when, on the evening of June 30, 2002, Rios, then on duty as a U.S. Customs Enforcement Officer at the Del Rio Port of Entry, was struck by a City Police Department vehicle being driven by an escaping City prisoner, Reymundo Avalos (Avalos). The defendants jointly answered and filed a Rule 12(b)(6) motion to dismiss, Wilson and Herrera claiming qualified immunity. Following denial of the motion in July 2004, Wilson and Herrera timely brought this interlocutory appeal under *Mitchell v. Forsyth*, 105 S.Ct. 2806 (1985).[1]

The complaint asserts that "Mr. Rios was subjected to negligence, injury, gross misconduct and damages from the deadly use of force in violation of rights guaranteed to him by the Fourth and Fourteenth Amendments." It alleges that at all relevant times

---

[1] The magistrate judge ruled on the motion to dismiss, the parties having agreed to proceed before him under 28 U.S.C. § 636(c). The magistrate judge amended the order to correct a clerical error, noting that the Fourth Amendment claim against the City was dismissed. The City also filed a timely notice of appeal but subsequently on its motion we dismissed its appeal.

2

Wilson and Herrera were, respectively, City of Laredo police officer and Chief of Police, acting within the course and scope of their employment, and — under the heading "FACTS" — the following:

"4.2 On June 30, 2002, Mr. Rios was thirty-six years old and he was on-duty as a U.S. Customs Enforcement Officer at the Del Rio Port of Entry along the United States border with Acuna, Coah., Mexico when he was struck and severely injured by a City Police Department patrol unit driven by an escaping prisoner, Mr. Reymundo Avalos.

4.3 Customs Officers at the Del Rio Port of Entry, including Mr. Rios, were responding to the City Police Department's request for assistance in intercepting a car chase which commenced at 617 Holt Street.

4.4 Mr. Reymundo Avalos was an adult person who had a criminal history in the City including a penchant or tendency to escape police custody which was well known to the police officers of the City Police Department, and he was known by the nickname around the City Police Department as "Houdini."

4.5 On the evening of June 30, 2002, Reymundo Avalos, had been placed under arrest by Officer Wesley Wilson.

4.6 Officer Wilson improperly left the prisoner Reymundo Avalos in the backseat of his patrol vehicle while the keys were in the ignition and the engine running while he visited with a person who lived in the neighborhood.

4.7 Mr. Avalos escaped from confinement in the rear sat, commandeered the patrol car, and sped away.

4.8 The City Police Department issued an "all points alert" on the escaping prisoner, Reymundo Avalos, and proceeded to channel Reymundo Avalos towards the International Bridge.

4.09 The City Police Department did not clearly inform the Del Rio Port of Entry Customs Officers that the vehicle being driven by Reymundo Avalos was an official marked patrol car of the City Police Department.

4.10 Del Rio Police Department officers pursued the patrol car being driven by Reymundo Avalos and had opportunities to divert or disable that vehicle, but failed to do so.

4.11 As the stolen vehicle driven by Reymundo Avalos approached the open lane, the vehicle violently struck Mr. Rios.

4.12 Mr. Rios sustained devastating injuries from the violent impact by that vehicle . . . ."

It is also alleged that "[t]he City" was "acting with deliberate indifference . . . breaching their duty to provide Officer Wilson with adequate supervision and training regarding the reasonable containment of prisoners in custody" and that "[t]he facts stated" in the "Facts" section of the complaint "constitute intentional, deliberate, and conscious indifference to well-known standards in the management of the City Police Department in the training on, demonstrated proficiency in, and the safe handling of individuals in custody . . . ."

Additional allegations are that "Officers of the City Police Department were aware of previous attempts of the prisoner to flee from their custody," "were aware that their actions increased danger to others including Mr. Rios" and "were aware of department and state law" [citing Tex. Trans. Code § 545.404] "that an operator of a motor vehicle may not leave a vehicle unattended without" stopping the engine, locking the ignition and removing the key from the ignition. It is also alleged that "Defendants acted

4

with deliberate indifference to Mr. Rios' safety, by creating an environment which would not have existed for the crime to occur otherwise," and that

> "7.1 . . . with an intentional, a deliberate, and a conscious indifference to the lives and safety of other persons, including Mr. Rios, the City adopted or maintained, through its final policymakers, unconstitutional policies and customs, and failed to implement constitutional and proper policies and procedures, which proximately caused or resulted in the violation of the constitutional rights of Mr. Rios . . . .
>
> 7.2 Officer Wilson acted willfully, deliberately, maliciously, or with reckless disregard for Mr. Rios' constitutional rights when, with knowledge of Reymundo Avalos' previous attempts to flee police custody, Officer Wilson left Mr. Avalos unattended in an operative police unit on June 30, 2002."

## DISCUSSION

*Standard of Review*

Our review of a district court's decision on a 12(b)(6) motion is, as we said in *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995):

> ". . . *de novo*, accepting all well-pleaded facts as true and viewing those facts in the light most favorable to [the plaintiff]. *Walker v. S. Cent. Bell Tel. Co.*, 904 F.2d 275, 276 (5th Cir. 1990); *Heaney v. United States Veterans Admin.*, 756 F.2d 1215, 1217 (5th Cir. 1985). . . . dismissal [is not proper] '"unless it appears beyond doubt that [the plaintiff] can prove no set of facts in support of [her] claim which would entitle [her] to relief."' *Heaney*, 756 F.2d at 1217 (quoting *Conley v. Gibson*, 355 U.S. 41, 45, 78 S.Ct. 99, 101-02, 2 L.Ed.2d 80 (1957)). However, 'the complaint must contain either direct allegations on every material point necessary to

5

sustain a recovery . . . or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial.' 3 WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 1216 at 156-159 (footnote omitted). '[A] statement of facts that merely creates a suspicion that the pleader might have a right of action' is insufficient. *Id.* at 163 (footnote omitted). 'Dismissal is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief . . .'" 2A MOORE'S FEDERAL PRACTICE ¶ 12.07 [2.-5] at 12-91 (footnote omitted). The court is not required to 'conjure up unpled allegations or construe elaborately arcane scripts to' save a complaint. *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 514 (1st Cir. 1988). Further, 'conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.' *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993)."[2]

Where the issue is one of qualified immunity, *Saucier v. Katz*, 121 S.Ct. 2151 (2001), states the relevant test as follows:

"A court required to rule upon the qualified immunity issue must consider, then, this threshold question: Taken

[2] *See also, e.g., Drs. Bethea, Moustoukas v. St. Paul Guardian Ins.*, 376 F.3d 399, 403 (5th Cir. 2004) ("conclusory allegations or legal conclusions masquerading as factual conclusions"); *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002) (same); *Jones v. Alcoa Inc.*, 339 F.3d 359, 363 n.4 (5th Cir. 2003) ("conclusory allegations or unwarranted deductions of fact" not accepted as true); *Kane Enterprises v. MacGregor (USA)*, 322 F.3d 371, 374 (5th Cir. 2003) (same).

*And see* WRIGHT & MILLER FEDERAL PRACTICE AND PROCEDURE: CIVIL 3d § 1216: "As one district court put the matter: '. . . if a pleader cannot allege definitively and in good faith the existence of an essential element of his claim, it is difficult to see why this basic deficiency should not be exposed at the point of minimum expenditure of time and money by the parties and the court.'" (*id.* at 227, 229-30; footnote omitted, quoting *Daves v. Hawaiian Dredging Co.*, 114 F. Supp. 643, 645 (D.C. Haw. 1953)).

in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?

. . .

If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Id.* at 2156.[3]

*Constitutional violation; state-created danger*

The complaint makes plain that Rios asserts a Fourteenth Amendment substantive due process right to be free from state deprivation of his bodily integrity liberty interest.[4] In *DeShaney v. Winnebago County*, 109 S.Ct. 998 (1989), the Court held that "[a]s a general matter . . . a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause," but recognized an exception respecting individuals in certain "special relationships" with the state, *id.* at 104, an exception which it described and explained as follows:

---

[3] *See also, e.g., Morin v. Moore*, 309 F.3d 316, 319 (5th Cir. 2002) (in appeal from order denying Rule 12(b)(6) motion raising qualified immunity our review is "*de novo*, accepting all well-pled facts as true").

[4] While the complaint also references the Fourth Amendment, none of the facts alleged even suggest that Rios was ever subjected to a search or seizure by anyone, and the Fourth Amendment is plainly not implicated. *See County of Sacramento v. Lewis*, 118 S.Ct. 1708, 1715 (1998). *See also id.* at n.7. Rios does not argue otherwise.

7

"In the substantive due process analysis, it is the State's affirmative act of restraining the individual's freedom to act on his own behalf — through incarceration, institutionalization, or other similar restraint of personal liberty — which is the 'deprivation of liberty' triggering the protections of the Due Process Clause, not its failure to act to protect his liberty interests against harms inflicted by other means." *Id.* at 1006.

Rios was injured from being struck by the patrol car "driven by an escaping prisoner, Mr. Reymundo Avalos" who had earlier "commandeered" the vehicle after having "escaped from confinement in the rear seat . . . and sped away." Obviously, Avalos is a purely private party not in any sense acting under color of law, and nothing in the complaint suggests otherwise. Moreover, it is likewise obvious that Rios was not incarcerated or institutionalized or under "other similar restraint of personal liberty" so as to be within the noted "special relationship" exception to *DeShaney*. Rios does not contend otherwise.

Rather, Rios seeks to invoke another purported exception to *DeShaney*, namely what has been referred to as the "state-created danger" theory. As we noted in *McClendon v. City of Columbia*, 305 F.3d 314, 327, 330-32 (5th Cir. 2002) (en banc), this court has frequently spoken of the "state-created danger" theory, and has discussed its various permutations and requirements as applied in other circuits, but neither the Supreme Court nor this court has ever either adopted the state-created danger theory or sustained a

8

recovery on the basis thereof.  We have, however, many times refused to allow recovery sought to be predicated thereunder.  *See, e.g., Beltran v. City of El Paso*, 367 F.3d 299, 307 (5th Cir. 2004) ("This court has consistently refused to recognize a 'state-created danger' theory of § 1093 liability"); *Rivera v. Houston Independent School District*, 349 F.3d 244, 249 (5th Cir. 2003) ("We have never recognized state-created danger as a trigger of State affirmative duties under the Due Process clause"); *Piotrowski v. City of Houston*, 237 F.3d 567, 584 (5th Cir. 2001) ("Although this court has discussed the contours of the 'state-created danger' theory on several occasions, we have never adopted that theory"); *Randolph v. Cervantes*, 130 F.3d 727, 731 (5th Cir. 1997) ("The state-created danger theory has not been adopted in this Circuit"); *Johnson v. Dallas I.S.D.*, 38 F.3d 198, 201 (5th Cir. 1994) ("no Fifth Circuit case has yet predicated relief on a state created danger theory"); *Leffall v. Dallas I.S.D.*, 28 F.3d 521, 530 (5th Cir. 1994) ("We have found no cases in our circuit permitting § 1983 recovery for a substantive due process violation predicated on a state-created danger theory").

Rios contends, however, that *Scanlan v. Texas A&M Univ.*, 343 F.3d 533 (5th Cir. 2003), adopted the state-created danger theory. It is certainly not clear that *Scanlan* purports to do so.  There the panel primarily addressed the district court's error in

9

considering matters outside the complaint in granting a Rule 12(b)(6) dismissal. The *Scanlan* panel did cite the *Johnson* and *Piotrowski* opinions respecting what would be required to make out a state-created danger claim,[5] and stated that the plaintiffs had adequately pled the there referenced required elements thereof; however, this discussion was introduced by the statement that "this Court has never explicitly adopted the state-created danger theory," *Scanlan* at 537, and *nowhere* in the opinion does the court expressly purport to adopt or approve that theory. At least two subsequent panels have construed *Scanlan* as *not* adopting the state-created danger theory. *See Beltran* at 307 (citing *McClendon* and *Scanlan* as examples of our refusal to recognize a state-created danger theory); *Rivera* at 249 n.5 ("In *Scanlan* . . . [d]espite remanding that case . . . for further proceedings, we did not recognize the state created danger theory"). We need not, however, ultimately resolve the meaning of *Scanlan* because, as explained below, prior decisions of this court more specifically on point here than *Scanlan* (and not cited in *Scanlan*) are controlling in the present setting.[6]

---

[5]    *Scanlan* does not cite *McClendon*.

[6]    In this connection we assume, *arguendo* only, that the en banc court's statement in *Walton v. Alexander*, 44 F.3d 1297, 1306 (5th Cir. 1995), that

10

*Officer Wilson*

The *only* conduct, or inaction, alleged respecting Officer Wilson, and the only fault or wrongdoing sought to be charged to him, is that on the evening in question, after he had placed Avalos under arrest, he "improperly left the prisoner . . . Avalos in the backseat of his patrol car while the keys were in the ignition and the engine running while he visited with a person who lived in the neighborhood," that as a result "Avalos escaped from confinement in the rear seat, commandeered the patrol car, and sped away," and that "Wilson acted willfully, deliberately, or with reckless disregard for Mr. Rios' constitutional rights when, with knowledge of Reymundo Avalos's previous attempts to flee police custody, Officer Wilson left Mr. Avalos unattended in an operative police unit." It is not alleged that in so leaving the vehicle unattended Wilson knew or believed that Avalos would likely drive the vehicle

---

". . . we hold that a 'special relationship' arises between a person and the state *only* when this person is involuntarily confined against his will through the affirmative exercise of state power. *Absent this 'special relationship*,' the state has *no duty* to protect nor liability from failing to protect a person under the due process clause of the Fourteenth Amendment from violence at the hands of a private actor." (emphasis added)

does not constitute an across-the-board preclusion of application of the "state-created danger" theory in every conceivable factual context.

11

to the Del Rio Port of Entry or would more likely endanger anyone there as opposed to any other member of the general public in or around the streets of Del Rio or its environs. In fact, the contrary is to be inferred by the allegations that the "Police Department . . . proceeded to channel Reymundo Avalos towards the International Bridge" and that the police officers pursuing the "stolen" patrol car driven by Avalos "had opportunities to divert or disable the vehicle, but failed to do so." It is not alleged Wilson participated in the pursuit of Avalos or requested assistance from any Customs Officers in intercepting Avalos or that he had anything to do with the wording or transmission of the "all points alert" or the failure to "clearly inform" Customs Officers that the vehicle was a police department "official marked patrol car." There is no allegation that any alleged action or failure to act on the part of Wilson was taken by him with the actual purpose or intention of causing injury to *anyone*, much less Rios whom it is not alleged Wilson in any way knew or even knew of.

Our decisions make clear that the facts alleged do not show that Wilson's conduct violated any constitutional right. In *Saenz v. Heldenfels Bros. Inc.*, 183 F.3d 389 (5th Cir. 1999), the plaintiffs were injured when a (private actor) drunk drove his truck into the plaintiffs' oncoming vehicle, and we held there was no constitutional violation on the part of a senior deputy sheriff

12

who had ordered his junior deputy not arrest or investigate (as the junior wanted to) the truck driver, whom both believed to be drunk as he sat in his vehicle (just in front of the deputies) at a stop sign for some 15 minutes and was known to be "always drunk" and "stopped for that" and had eventually pulled away making "a wide right turn." "A few minutes later" the drunk drove his truck into the plaintiffs' vehicle. *Id.* at 390. Relying on *DeShaney*, we held that the allegations did not "state a constitutional claim." *Id.* at 391. We rejected application of the state-created danger theory stating that the defendant senior deputy "was neither aware of an immediate danger facing a known victim, nor did he use his authority to prevent the appellants from receiving aid. This 'state-created danger' theory is inapposite without a known victim," and that a state officer "cannot offend due process by permitting an intoxicated driver to remain on the highway, thereby increasing the risk of harm to unidentified and unidentifiable members of the public." *Id.* at 392. The same principles apply here and dictate the conclusion that Wilson's conduct violated no constitutional right.

We made a similar holding in *Morin v. Moore*, 309 F.3d 316 (5th Cir. 2002), where the son of defendant police officer Moore shot the plaintiffs using an AK-47 assault rifle which officer Moore had procured from the Police Department and stored in his son's bedroom

13

notwithstanding that he, and the defendant police officer who furnished him the weapon, knew that the son was a psychologically unstable drug user who revered Nazi ideology, and officer Moore, the night before the shooting, had kicked his son's former girlfriend out of his house, knowing both that she had a new boyfriend and that the son was looking for the new boyfriend (a plaintiff victim of the shooting).  We affirmed the district court's Rule 12(b)(6) dismissal of the complaint, noting that "the allegations in this case do not show specific knowledge of a harm to a known victim."  *Id.* at 323.[7]

Relatedly, we have rejected section 1983 liability in instances where the alleged deliberate indifference of police allowed a prisoner or prisoners to injure an officer.  In *Hogan v. City of Houston*, 819 F.2d 604 (5th Cir. 1987), a pre-*DeShaney* decision, we affirmed a Rule 12(b)(6) dismissal of a section 1983 complaint alleging that "certain policies" of the City and its Chief of Police respecting "procedures in the prisoner intake facility, allowed a prisoner to grab another officer's gun and shoot [plaintiff, officer] Hogan with it" and that such policies

---

[7] *See also Lester v. City of College Station*, 103 Fed. App. 814 (5th Cir. 2004) ("even if it is assumed that the state-created danger theory applies, liability exists only if the state actor is aware of an immediate danger facing a known victim" and does *not* extend to "all foreseeable victims").

"'manifest deliberate indifference to or conscious disregard' for the safety of officers . . . on the part of the [defendants] City and [its] Chief of Police." *Id.* We held no constitutional violation was alleged.

In *deJesus Benavides v. Santos*, 883 F.3d 385 (5th Cir. 1989), one of our first decisions to consider *DeShaney*, we affirmed the Rule 12(b)(6) dismissal of a section 1983 complaint by county jail guards who while on duty and unarmed were shot by prisoners attempting to escape; defendants were the sheriff, employer of the guards, as well as the county commissioners and county judge. The complaint alleged that the sheriff had been warned by the DEA nearly two weeks before that a jailbreak was imminent and was also aware of a persistent pattern on contraband smuggling into the jail, but nevertheless the defendants, in "callous indifference" to the safety of the guards, failed to take any appropriate action to prevent or adequately prepare against, or protect the guards from, the attempted escape and accompanying inmate violence. We held that dismissal was required under *DeShaney's* general rule that "'a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause.'" *Id.*, 883 F.3d at 387 (quoting *DeShaney*, 109 S.Ct. at 1004). We likewise noted that *DeShaney* "confirms" our earlier holding in *Hogan*. *Id.*, 883 F.3d at 387. Both *Leffall*, 28 F.3d at 528, and

15

our en banc opinion in *Walton*, 44 F.3d at 1304, rely on *deJesus Benavides* for our holdings that there was no constitutional violation when state actors were deliberately indifferent to, and wrongfully failed to protect from private violence, individuals with whom the state was not in the requisite special relationship described in *DeShaney*.

These decisions — *Saenz*, *Morin*, *Hogan*, and *deJesus Benavides* — were all rendered before *Scanlan* and (except for *Hogan*) after *DeShaney*, and they plainly dictate the conclusion that Wilson's alleged conduct violated no constitutional right of Rios's; nothing in *Scanlan*, however it is interpreted, can change that and we are bound to follow those pre-*Scanlan* decisions.[8]

We conclude that no constitutional violation on the part of Wilson was alleged and that accordingly the district court should have granted, and erred by denying, Wilson's Rule 12(b)(6) motion

---

[8] The rule in this circuit is that where two previous holdings or lines of precedent conflict the earlier opinion controls and is the binding precedent in this circuit (absent an intervening holding to the contrary by the Supreme Court or this court en banc). *See, e.g., Billiot v. Puckett*, 135 F.3d 311, 316 (5th Cir. 1998). The binding force of earlier opinions extends to alternative holdings but not to *obiter dictum*. *In Re Hearn*, 376 F.3d 447, 453 & n.5 (5th Cir. 2004). However, "no panel is empowered to hold that a prior decision applies only on the limited set of facts set forth in that opinion," *U.S. v. Smith*, 354 F.3d 390, 399 (5th Cir. 2003), and a prior panel's explication of the rules of law governing its holdings may not generally be disregarded as dictum. *Gochicoa v. Johnson*, 238 F.3d 278, 286 n.11 (5th Cir. 2000).

16

to dismiss the section 1983 claims against him on the basis of qualified immunity.

*Chief Herrera*

The complaint alleges absolutely *no* facts whatever regarding Chief Herrera, either by name or by position (such as "Chief" or "Chief of Police"), *except* that he "resides in Del Rio, Texas," and "[a]t all relevant times he was the Chief of the City Police Department" and, along with Wilson and "[t]he officers and employees of the City," was "at all times relevant acting in bona fide pursuance of general authority to perform for the City on the subjects and matters to which their acts relate and are imputed to the City."

There is no vicarious or *respondeat superior* liability of supervisors under section 1983. *Thompkins v. Belt*, 828 F.2d 298, 303-04 (5th Cir. 1987). "Rather, a plaintiff must show either the supervisor personally was involved in the constitutional violation or that there is a 'sufficient causal connection' between the supervisor's conduct and the constitutional violation." *Evett v. Detntff*, 330 F.3d 681, 689 (5th Cir. 2003). It is facially evident that this test cannot be met if there is no underlying constitutional violation.[9] *Breaux v. City of Garland*, 205 F.3d

---

[9] Even apart from this deficiency, the complaint alleges *nothing* on the part of Herrera other than the fact that he was

17

150, 161 (5th Cir. 2000) ("the fact that Plaintiff's First Amendment rights were not actually infringed exonerates Holified from supervisory liability"). We have held that we "use the same standard in assessing an individual supervisor's liability under § 1983" as that used "in assessing a municipality's liability" thereunder. *Doe v. Taylor ISD*, 15 F.3d 443, 453 (5th Cir. 1994) (en banc) (*see also id.* at 454, supervisor's deliberate indifference to subordinate's wrongdoing must have "caused a constitutional injury to the" plaintiff). In *Collins v. City of Harker Heights*, 112 S.Ct. 1061 (1992), the Court held that "proper analysis requires us to separate two different issues when a section 1983 claim is asserted against a municipality: (1) whether plaintiff's harm was caused by a constitutional violation, and (2) *if so*, whether the City is responsible for that violation." *Id.* at 1066 (emphasis added). *Collins* went on to hold that because there was no underlying constitutional violation,[10] Rule 12(b)(6) dismissal was proper *even though* (as the Court assumed *arguendo*) "the allegations in the complaint are sufficient to provide a

---

Chief of Police "at all relevant times." That itself renders the complaint insufficient to state a § 1983 claim against Herrera.

[10] The plaintiffs' decedent, a City employee, lost his life because the City, despite being on notice of the risks, systematically and intentionally failed to provide minimal safety training and equipment required by state law.

18

substitute for the doctrine of *respondeat superior* as a basis for imposing liability on the City for the tortious conduct of its agents." *Id.* at 2068.[11]  *See also DeShaney*, 109 S.Ct. at 1007 n.10 (because the county employee social workers did not violate child's constitutional rights by failing to protect him from private actor violence "we have no occasion to consider . . . whether the allegations in the complaint are sufficient to support a § 1983 claim against the county . . ."); *City of Los Angeles v. Heller*, 106 S.Ct. 1571, 1573 (1986) (no case "authorizes the award of damages against a municipal corporation based on the actions of one of its officers when . . . the officer inflicted no constitutional harm.  If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have *authorized* the use of constitutionally excessive force is quite beside the point"); *City of Oklahoma v. Tutle*, 105 S.Ct. 2427, 2436 n.8 (1985).  And, clearly controlling on this issue is our above discussed decision in *Saenz* where, citing *Heller*, we rejected recovery sought against the county on the basis of its alleged "custom or policy permitting

---

[11]  *See also id.* at 1067-68: stating that in *Canton v. Harris*, 109 S.Ct. 1197 (1989), "we concluded that *if* a city employee violates another's constitutional rights, the city may be liable *if* it had a policy or custom of failing to train its employees and that failure to train caused *the constitutional violation.*" (emphasis added).

Gonzales to interfere with junior officers' attempts to apprehend drunk drivers" because we held that, under *DeShaney*, Deputy Gonzalez's preventing the arrest of the drunk driver (who minutes later ran into plaintiffs) did not violate plaintiffs' constitutional rights. *Saenz*, 183 F.3d at 392-93. [12]

Finally, the complaint fails to state a claim against Chief Herrera for yet another separate and independent reason. We have frequently held that supervisor liability under section 1983 requires a showing of the supervisor's "deliberate indifference to the known or obvious fact that such constitutional violations would result" and "[t]hat 'generally requires that a plaintiff

---

[12]     The only training or supervision deficiencies even generally alleged in the complaint are those relating to "containment of prisoners in custody," "safe handling of individuals in custody," and the requirement that the operator of a motor vehicle not leave it unattended without stopping the engine, locking the ignition and removing the key from the ignition. These relate only to Wilson's alleged conduct which we hold did not violate the Constitution.

It is also alleged that "City Police Department" thereafter did "channel" the fleeing Avalos "towards the International Bridge," "had opportunities to divert or disable" the stolen patrol car "but failed to do so," and did not "clearly" inform Customs officers that vehicle was "an official marked patrol car." None of these actions or omissions are alleged to be improper; nor is it alleged that any of such matters resulted from any police department custom or policy or inadequate training or supervision, nor is any custom or policy or inadequate (or other) training or supervision in relation to any of such matters alleged. Nor do any of such allegations referenced in this paragraph state a constitutional violation. *See County of Sacramento v. Lewis*, 118 S.Ct. 1708 (1998); *DeShaney*; *Saenz*.

20

demonstrate at least a pattern of similar violations.'" *Johnson v. Deep East Texas Regional Narcotics*, 379 F.3d 293, 309 (5th Cir. 2004). *See also, e.g.*, *Estate of Davis v. City of North Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005); *Burge v. St. Tammany Parish*, 336 F.3d 363, 370 (5th Cir. 2003); *Cousin v. Small*, 325 F.3d 627, 637 (5th Cir. 2003). Here there is *no* allegation of *any* prior incident in which *any* arrestee or prisoner ever commandeered (or even attempted to commandeer) a police car, much less that any such ever resulted in any injury to another person. Nor is any other *fact* alleged which would tend to indicate that Chief Herrera had the deliberate indifference necessary for supervisory liability.

We conclude that no constitutional violation on the part of Chief Herrera is alleged,[13] and that accordingly the district court

---

[13] We also note that plaintiffs, after receiving certain documentary discovery (including police department incident reports concerning the subject events of June 30, 2002), and subsequently having taken the deposition of a police Lieutenant Lissner who came upon Avalos while he was still in Wilson's vehicle and later pursued Avalos after he escaped in Wilson's vehicle, moved in June 2004 to file an amended complaint in which the only change mentioned in the motion (the proposed amended complaint is not in the record) is the dropping of Chief Herrera as a defendant and the adding of Lissner as a defendant. The motion asserts that "Police Chief Herrera was not involved in the arrest and chase of Reymundo Avalos. Thus, Plaintiffs have no reason to nor intention of continuing to pursue their claims against Police Chief Herrera" and that the motion should be granted "because the amended pleading is appropriate to dismiss a party against whom Plaintiffs has [sic] no claim." The district court did not rule on the motion and was

21

should have granted, and erred by denying, Herrera's Rule 12(b)(6) motion to dismiss the section 1983 claims against him on the ground of qualified immunity.

## CONCLUSION

Because the facts alleged in the complaint, taken in the light most favorable to plaintiffs, do not show that either Wilson or Herrera violated Rios's federal constitutional rights, the district court should have granted, and erred in overruling, the qualified immunity based Rule 12(b)(6) motion of Wilson and Herrera as to Rios's section 1983 claims against them; and the district court's order overruling that motion is accordingly hereby REVERSED. As claims against the City and state law claims against Wilson and Herrera remain, the case is remanded for further proceedings consistent herewith.

REVERSED and REMANDED.

---

apparently unaware of it as is not mentioned in the court's July 14 order overruling the 12(b)(6) motions (or in subsequent clerical correction thereof). After the court's July 14 order plaintiffs in effect withdrew the request to amend and asserted to the court that "in light of this court's order of July 14, 2004, Chief Herrera should not be dismissed at the present time" but that "Lt. Lissner" should be made "an additional Defendant along with Defendants Officer Wilson and Chief Herrera." So far as the record reflects there has been no ruling making Lt. Lissner a party.

22