REVISED October 15, 2009

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 14, 2009

Charles R. Fulbruge III
Clerk

No. 04-60962

BARBARA HUSS; RODNEY HUSS

Plaintiffs - Appellees

v.

JOHN OVERTON GAYDEN, M.D.; MEMPHIS OBSTETRICS AND
GYNECOLOGICAL ASSOCIATION PC

Defendants - Appellants

Appeal from the United States District Court
for the Northern District of Mississippi

ON PETITION FOR REHEARING AND REHEARING EN BANC

(Opinion 6/10/09, 5 Cir., 571 F.3d 442)

Before HIGGINBOTHAM, DeMOSS, and OWEN, Circuit Judges.
PER CURIAM:

The Petition for Panel Rehearing is DENIED. Judge Higginbotham dissents from the panel's denial of rehearing.

The court was polled at the request of one of the members of the court. A majority of the judges who are in regular active service and not disqualified not

having voted in favor of rehearing en banc (FED. R. APP. P. 35 and 5TH CIR. R. 35), the Petition for Rehearing En Banc is likewise DENIED. Judge Higginbotham and Judge Elrod have authored dissenting opinions, which are attached. Upon the filing of this order, the clerk shall issue the mandate forthwith. See FED. R. APP. P. 41(b).

PRISCILLA RICHMAN OWEN, Circuit Judge, concurring:

I write as a member of the panel to address the dissenting opinions. Each of the opinions proceeds on the incorrect premise that the panel majority has held that the magistrate judge erred in excluding expert testimony regarding specific, as distinguished from general, causation. The dissenting opinions do not take issue with the panel majority's conclusion that Dr. Reddix was qualified to offer testimony regarding general causation. The points on which the dissents and the panel majority differ boil down to this: (1) did the panel majority hold that the magistrate judge erred in excluding the testimony of Dr. Reddix as to general, rather than specific, causation, and (2) does the record support the dissents' assertion that Dr. Reddix's testimony was excluded because it was addressed to specific, rather than general, causation. An examination of the panel majority's opinion and the record resolves these questions. They reflect that "the crux" of Dr. Reddix's testimony pertained to general causation,[1] and his testimony was excluded because the magistrate judge concluded he was not qualified to testify regarding even general causation.[2]

I

I respectfully submit that the panel majority's opinion is clear that the exclusion of Dr. Reddix's testimony was error because it addressed general causation and that Dr. Reddix was qualified to offer general causation testimony. The following quotations are from the panel majority's opinion:

- Defendants sought to elicit testimony from their expert, Dr. Reddix, that medical literature relied upon by Dr. Carlton [the plaintiffs' expert] in forming his opinion does not show a causative relationship between Terbutaline and cardiomyopathy. The magistrate judge did not permit Dr.

---

[1] Huss v. Gayden, 571 F.3d 442, 456 (5th Cir. 2009).

[2] Id. at 449.

Reddix to state this opinion, as this was "outside the area of his expertise."[3]

- Dr. Reddix said: "Basically, there's no established evidence that has been tested and published in major journals or the [Physician's Desk Reference] that it causes cardiomyopathy." Counsel then asked "what in the medical records caused you to believe that Terbutaline is not the causative agent?" Dr. Reddix said one could not deduce a causative relationship because the articles relied on by the Husses' experts had very small sample sizes, and additionally, some articles may have confused pulmonary edema with cardiomyopathy. By contrast, Dr. Reddix was prepared to testify based upon a study of 9,000 patients who took Terbutaline and did not develop cardiomypathy. The thrust of the proffered testimony was that Terbutaline could not be said to be the cause of Barbara's cardiomyopathy, and that the cause of her condition could not be determined, i.e., the condition is idiopathic.[4]

- Dr. Reddix testified in part:

  > [M]any of the articles that they talk about were very, very small studies. And the possibility of chance occurrences were very high. When you had four people out [of] 16, where it only occurs in one in 5,000 to 10,000 patients. So a lot of times the journals that were listed [by the Husses' experts] also confused what was said about pulmonary edema as a part of the problem, which would lead to a cardiomyopathy in any of those studies.[5]

- Defendants posit that this qualified Dr. Reddix to opine that the medical literature and Barbara's records do not allow one to infer that Terbutaline causes cardiomyopathy, or that it

---

[3] Id. at 449.

[4] Id. at 453-54.

[5] Id. at 454 n.9.

caused Barbara's case. . . . Defendants argue that the ruling was prejudicial because it prevented them from challenging the Husses' causation testimony and Dr. Carlton's characterization of the medical literature.[6]

•   Through Dr. Reddix's testimony, the defendants sought primarily to discredit the contention that Terbutaline is a known cause of cardiomyopathy, and consequently, that Terbutaline more likely than not caused Barbara's cardiomyopathy. Dr. Reddix did not need to be board-certified in cardiology or toxicology to explain that the studies relied on by the Husses do not prove a causative relationship–especially given the very small number of patients in those studies. Dr. Reddix's training and experience as a medical professional qualify him to tell the jury why the literature does not establish a causal link. Moreover, Dr. Reddix identified a study of over 9,000 people which tended to undermine the Husses' claims. In short, Dr. Reddix's education and knowledge allowed him to form a reliable opinion as to whether, as a general matter, Terbutaline causes cardiomyopathy.[7]

•   We think that the more general nature of Dr. Reddix's conclusions helps to distinguish the present case from Tanner.[8] There, all experts agreed as a general matter that birth asphyxia can cause cerebral palsy. 174 F.3d at 548. The issue was more specific: whether the defendants' failure to properly treat a newborn baby's birth asphyxia caused the baby's cerebral palsy, or whether the cerebral palsy was caused by another event. See id. at 547-48. We held that it was erroneous to admit an expert's opinion that the defendants' actions led to the baby's cerebral palsy when the medical literature did not support this theory of causation, the expert had not examined the baby, and the expert also had no personal experience that would validate his theory. Id. at 548.

---

[6] Id. at 454.

[7] Id. at 455.

[8] Id. (citing Tanner v. Westbrook, 174 F.3d 542 (5th Cir. 1999)).

In this case, the parties fought mainly over whether Terbutaline can cause cardiomyopathy. The Husses' expert, Dr. Carlton (who is a toxicologist, not a cardiologist), relied on this general premise when opining that Terbutaline caused Barbara's cardiomyopathy. . . . The main purpose of Dr. Reddix's opinion was to rebut an untenable conclusion. Dr. Reddix's knowledge qualified him to tell the jury that Dr. Carlton's inferential leap was unsupported by medical literature, and that in his judgment, Barbara's peripartum cardiomyopathy was idiopathic. We do not think that Dr. Reddix needed to be specialized in cardiology or toxicology to act as a counterpoint to the Husses' experts.[9]

- The crux of this case was whether Terbutaline causes cardiomyopathy. The magistrate judge's ruling prevented the defendants from demonstrating that the Husses relied on medical literature which was unreliable, anecdotal, and contradicted by other studies. The Husses insist the defendants were not prejudiced because the defendants' other witnesses disclaimed a causal link between the drug and Barbara's condition. However, none of the other witnesses gave the level of detail that Dr. Reddix would have presented, nor did the witnesses testify about studies showing no link between Terbutaline and cardiomyopathy. The exclusion was not harmless error. In a close case such as this, Dr. Reddix's testimony would "have added information that, if the jurors found it credible, might have been determinative" of the difficult causation questions. See Battle v. Mem'l Hosp. at Gulfport, 228 F.3d 544, 553 (5th Cir.2000).[10]

The panel majority's opinion should not, and I believe cannot, be read as holding that the magistrate judge erred because testimony regarding specific causation was excluded. While there are perhaps statements that might be lifted out of context to support an argument that the panel majority was addressing Dr. Reddix's qualifications to testify regarding specific causation,

---

[9] Id.

[10] Id. at 456.

that is not the import of the opinion. The opinion, read in its entirety regarding the exclusion of expert testimony, makes clear that Reddix would have testified that the plaintiffs' experts' opinions regarding general causation were not scientifically reliable and that Terbutaline has not been shown to cause cardiomyopathy. The logical inference from this testimony was that Barbara Huss's cardiomyopathy could not be caused by Terbutaline if there is no reliable evidence that Terbutaline causes cardiomyopathy. But the obvious inference regarding specific causation that is drawn from general causation testimony does not render Dr. Reddix's general causation testimony either "specific" causation testimony or inadmissible because he might not be qualified to give "specific" causation testimony.

II

With regard to the record, much of the testimony and the magistrate's ruling are contained in the panel majority's opinion, and I will not repeat that here. I add only that Dr. Reddix was the only defense expert designated to discuss the medical literature on which the plaintiffs' expert based an opinion regarding general causation. It was apparent at trial that Dr. Reddix would testify about general causation. Counsel for the Husses conducted a voir dire examination of Dr. Reddix early in his testimony to attempt to lay a foundation for excluding him as a witness on the basis that he was not qualified to opine regarding causation. Counsel for the Husses asked Dr. Reddix, "Now, in this case, you are being offered as an expert in the field of internal medicine and principally as it relates to whether Terbutaline caused or can cause cardiomyopathy. Is that your understanding?" Reddix replied, "Yes." This unmistakably reflects that general causation was at issue.

Judge Higginbotham's dissenting opinion asserts that "Reddix opined at length on general causation, before any objection. . .," implying both that Reddix

had completed his testimony regarding general causation and that any error in excluding additional testimony regarding general causation would have been harmless. The record does not bear out this assertion. As the panel majority opinion makes clear, Dr. Reddix was prepared to testify that articles on which the plaintiffs' expert relied were not scientifically reliable.[11] This relates to general, not specific, causation, as discussed above. The magistrate judge excluded this testimony, concluding that Reddix was not qualified to testify about causation. No other witness offered testimony regarding the medical literature on which the plaintiffs' expert relied.

Judge Higginbotham's dissent lifts the questions asked of Dr. Reddix during the proffer out of context in an effort to demonstrate that only specific causation testimony was at issue and was excluded. But when the record is considered as a whole, including the proffered testimony that is quoted in the panel majority's opinion,[12] there can be little doubt that the parties and the magistrate judge understood that Dr. Reddix was prepared to testify regarding the scientific reliability of the articles on which the plaintiffs' expert relied. That was directly related to general, not specific, causation, and that testimony was excluded.

III

Judge Higginbotham's dissent once again excoriates the panel for referring the statute of limitations issue to the Mississippi Supreme Court. He now castigates other members of the court for denying rehearing on the limitations issue. I find it exceedingly difficult to understand why a federal court should be criticized for asking a state court, in a diversity case, to resolve what appeared

---

[11] Id. at 449, 453-54, 455.

[12] Id. 453-54.

to many to be an unsettled question of state law.  In my view, it was precisely because the state law appeared to conflict that this case was not taken en banc and instead, the limitations issue was certified by the panel.

* * * * *

I concur in the denial of rehearing en banc.

PATRICK E. HIGGINBOTHAM, Circuit Judge, with whom KING, DAVIS, WIENER, BENAVIDES, STEWART, and DENNIS, Circuit Judges, join, dissenting:

I

Over nine years ago, Barbara Huss and her husband Rodney Huss filed this medical malpractice lawsuit, alleging that defendants negligently administered the drug Terbutaline to Barbara during her pregnancy—negligence that caused Barbara's cardiomyopathy, a condition that severely crippled her for life and shortened her life span. The Husses won a jury trial in August 2004, and the defendants appealed to our court. A panel majority here reversed and rendered the judgment holding that the case was barred by limitation.[1] The Husses requested rehearing en banc. In 2006, it was denied by an equally divided vote of seven judges "for" and seven "against." The panel majority granted panel rehearing sua sponte, withdrawing its opinion.[2] Eleven months later, it certified, over dissent, the question to the Mississippi Supreme

---

[1] Huss v. Gayden (Huss I), 465 F.3d 201, 208–09 (5th Cir. 2006); id. at 209 (Higginbotham, J., dissenting). The panel majority's holding that the case was barred by limitations was itself inexplicable. The defense here was that cardiomyopathy was idiopathic—that science, let alone the defendant doctors, did not know its cause. They pled limitation but offered no evidence at trial in its support. This left the "defense" available only as a matter of law as any fact questions the defense presented were found as a matter of law in favor of the plaintiffs' judgment. This made practical sense as able defense counsel could not stand before the jury and argue that his client doctor could not have known that Terbutaline was the cause—because science did not know—but Ms. Huss, a young Mississippi housewife, should have known when told that she suffered cardiomyopathy that it was caused by Terbutaline. Although Mississippi has a "discovery statute," the panel majority held that limitations ran from the time Huss learned she had cardiomyopathy–that she should have known then that Terbutaline was the cause–as a matter of law. The Mississippi Supreme Court politely responded that the case was not barred.

[2] Huss v. Gayden (Huss II), 2006 WL 5013195, at *1 (5th Cir. Dec. 27, 2006) (per curiam).

Court.[3] The Mississippi court found that the defendants' limitations defense was meritless.[4]

The panel moved to a judgment reversing and remanding for trial error. The found error was in the trial judge's refusal to allow one of the defense experts, Dr. Reddix, to express the opinion that Terbutaline was not a cause of Barbara Huss's cardiomyopathy, although the witness was allowed without objection to testify fully about general causation and that cardiomyopathy was idiopathic; its cause was unknown to medicine and unknowable to the defendant doctors. The error it fastened on was a refusal to allow Reddix to continue on from his testimony about general causation and relate it to Huss; that it was a manifest disregard of the law to do so. The opinion's author, writing alone, also subjected plaintiffs' experts to a personal view of Daubert.[5] This gratuitous instruction is explained by its history. It came after an earlier failed effort of the panel to reverse the case for insufficient evidence—this by disregarding plaintiffs' evidence as failing the demands of Daubert, despite the fact that there was no objection to the admission of the testimony of plaintiffs' experts, on any basis, making the evidence competent as a matter of law. That treatment of Daubert was recast as an instruction to the district court on remand.

The Husses again petitioned for rehearing en banc, a request our court now rejects by an equally divided vote. Eight judges concluded that the case was

---

[3] Huss v. Gayden (Huss III), 508 F.3d 240, 245–48 (5th Cir. 2007); id. at 248 (Higginbotham, J., dissenting).

[4] Huss v. Gayden (Huss IV), 991 So. 2d 162, 165 (Miss. 2008).

[5] Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993). This view should not be confused with the panel majority's contrasting view of Daubert deployed to sustain the admissibility of Reddix's expression of opinions on specific causation—that the established distinct thresholds for general and specific causation do not apply to Reddix because he was testifying in rebuttal to plaintiffs' experts who testified regarding specific causation. This discrimination favoring defendant doctors is legally indefensible, whatever its force as a matter of "policy."

not "en banc worthy," ignoring the views of eight judges who think the decision was plainly wrong and contrary to settled precedent.

The sole question remains whether the trial court committed manifest error in sustaining the objection to part of the testimony of Reddix. I will not repeat my panel dissent, instead, I write to publish the panel's refusal to apply circuit precedent, to respect our highly deferential standard of review, and to set the Daubert bar at the same level for plaintiffs and defendants. Our full court's refusal to even hear the case only solidifies the error of the panel and exposes another—the subscription of eight members of this court to a stunningly aggressive view of the judicial role coupled with a misguided view of the role of the en banc court—a subscription with which I cannot join and to these eyes is profoundly mistaken. It is telling that each judge voting against reconsideration of the court's present decision also voted against en banc reconsideration of the reversal of the judgment as time barred. The only change in the voting pattern came with three new judges, two of whom voted against en banc and one voting for.

II

Our review of the trial court's exclusion of Reddix's testimony was for abuse of discretion, here the most deferential of that genre; whether the trial court manifestly disregarded the law. The panel majority turned this standard upside down. It inserted "what could have happened" for what did. "Manifest error is one that is plain and indisputable, and that amounts to a complete disregard of the controlling law."[6] We do not have the discretion to decide afresh

---

[6] Guy v. Crown Equip. Corp, 394 F.3d 320, 325 (5th Cir. 2004) (citing General Elec. Co. v. Joiner, 522 U.S. 136, 141–42 (1997)); Watkins v. Telsmith, Inc., 121 F.3d 984, 988 (5th Cir. 1997); Smogor v. Enke, 874 F.2d 295, 297 (5th Cir. 1989); see also James v. Harris County, No. 07-20725, 577 F.3d 612, 619 (5th Cir. 2009) ("District courts enjoy wide latitude in determining

preliminary facts of admissibility, that discretion belongs to the trial court. The ultimate question of whether an expert is qualified to testify is a question of law, but that inquiry is made in light of the lower court's preliminary factual findings on the matter,[7] including the scope of excluded evidence. The record here is pellucid. There is no uncertainty of what happened at trial—not with the objection, the ruling, or defendant's proffer. The panel majority struggled to find uncertainty in the record, an effort to find what does not exist. This whole effort disregards the controlling principle—that even if it succeeded in raising a question of fact underlying the trial court ruling on admissibility or the scope of the ruling—and it did not—the question would have to be resolved in support of the trial court ruling. To take away the jury verdict on the ruling of the trial judge drains all discretion from the hands of the judges who are best equipped to decide and substitutes a de novo standard for plaintiffs' cases. That this is being done while waiving the Daubert flag is all the more confounding.

## III

The question before the panel required application of the concepts of general and specific causation, and the line between the two. As the panel dissent explained, our decision in Tanner v. Westbrook binds this court on the

---

the admissibility of expert testimony, and the discretion of the trial judge and his or her decision will not be disturbed on appeal unless manifestly erroneous." (quoting Watkins, 121 F.3d at 988) (internal quotation marks omitted)).

[7] 21A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 5053.1 (2009) ("The qualifications of a person to render an expert opinion is a Rule 104(a) preliminary fact to be decided by the judge. The cases and the writers all agree on this." (citations omitted)).

issue and requires us to acknowledge the fundamental principle of the general-specific dichotomy: that a witness may be competent to testify about general causation but not specific causation.[8] In Tanner, we reversed a Mississippi jury award of damages to parents against doctors in a cerebral palsy case, concluding that the district court committed reversible error in allowing a plaintiff's expert with general medical training to express an opinion on specific causation because he was only qualified to express an opinion on general causation.[9]

In this case, Reddix opined at length on general causation, before any objection, stating for example that:

> An important thing about that to me is that in pregnancy we don't even know what causes it [cardiomyopathy]. They just put down it's pregnancy, peripartal. They don't know what causes it. Because there are 30 causes of it–there are 30 causes of it if you're not pregnant, and then there's about four or five even if you are pregnant, so–"

When defense counsel moved to matters of specific causation, however, plaintiffs objected. The question to which the magistrate judge sustained the objection indisputably sought an opinion on specific causation:

> Doctor, do you have an opinion, based upon reasonable medical probabilities and upon your education, training, and experience as a physician, as well as your review of these materials I just read, as to whether or not Terbutaline caused or contributed to the cardiomyopathy suffered by Barbara Huss?

After the objection, and out of the presence of the jury, the magistrate judge made it clear he was excluding only specific causation testimony. He asked defense counsel "on what basis is this witness qualified to offer any

---

[8] 174 F.3d 542 (5th Cir. 1999).

[9] Id. at 547.

opinion about whether administering Terbutaline did or did not cause the cardiomyopathy here?," before concluding "I'm not going to let him express an opinion as to whether the administration of this drug caused or did not cause the cardiomyopathy here."

Defense counsel then posited each and every proffer question in specific causation terms:

1.  "We need you to state in narrative, you know, not too long, state your basis as to why Terbutaline in your opinion was not the cause of or contributing cause of cardiomyopathy."

2.  "Did your review of the medical records have anything to do with your opinion as well?"

3.  "Could you indicate, state what in the medical records caused you to believe that Terbutaline is not the causative agent?"

These are inquiries into specific causation. Reddix testified before the jury at length and without objection that science does not know what causes cardiomyopathy, or whether Terbutaline causes it. He was not allowed to also testify that Terbutaline was not the cause in this case. Defense asked the four questions (one in front of the jury, and the three in proffer) in an attempt to elicit testimony on specific causation, and it was that testimony the district court excluded. After this exclusion, defense counsel made no attempt to relate his questions to general causation. No ruling of the trial judge barred the defense lawyer from eliciting general causation testimony—such as a critique of the plaintiffs' scientific studies—or from supplementing earlier opinions already in evidence.

The magistrate applied the principles this court established in Tanner—that opinions on specific causation involve the specialized skill of

recognizing cause and effect in a particular and unique case, as opposed to rote explanation of the relevant literature, and therefore pose a higher bar for reliability—and ruled that Reddix lacked the experience and training to opine on "whether or not Terbutaline caused or contributed to the cardiomyopathy suffered by Barbara Huss," a distinct issue of specific causation and the exact question to which the objection was sustained.

Like the witness in Tanner, Reddix was not competent to connect general principles to the specific patient. For one, Reddix could not evince the requisite experience as a treating obstetrician and gynecologist who had experience in administering Terbutaline to pregnant patients. Under Tanner, then, it would have been reversible error to admit Reddix's opinion that Terbutaline was not a cause or the cause of Barbara Huss's injuries.

Even the defendants do not seriously defend the panel's refusal to apply Tanner. Rather they "concede" the undisputed fact that this entire case was about general causation, the relationship between Terbutaline and cardiomyopathy, not specific causation, the cause of Huss's injury—this to escape reliance on the indefensible contention that Reddix was competent to express an opinion on specific causation. This retreat only makes plain that refusing to allow the witness to go further and offer an opinion on specific causation could not be reversible error when the battle was pitched on general causation, and Reddix was allowed to testify on general causation without objection. The panel asserts that Reddix was competent to express his opinion that there was no scientific basis for linking Terbutaline to cardiomyopathy and was thus competent to rebut the testimony of Dr. Tucker who testified as to specific causation for the plaintiffs. Of course that is exactly what Reddix did—without objection. The ruling was a refusal to allow Reddix to go further. Here, the opinion defies the settled law of this circuit, holding that a person

competent to express an opinion on general causation is a fortiori competent to express an opinion on specific causation.

IV

This case should have been taken en banc to correct a large error in federal law. A diversity case it is but our issue of junk science is a federal issue, with far-ranging import. There is Tanner and our en banc case of Moore v. Ashland Chemical Inc.,[10] and before that, Eymard v. Pan American World Airways,[11] a pre-Daubert rejection of expert testimony, each urging trial judges to act as gatekeepers. The central thrust of these cases and Daubert has been to charge the trial judge to take hold: to turn back opinion testimony of party-engaged experts that rests on questionable competence, and to not kiss off issues of competence as going to the weight of the evidence, leaving a jury to offer answers that good science rejected. Our court's unwillingness to correct the panel error drops the gate, and belies the role of the en banc court; it will and should be read as a rank preference of defendants in malpractice cases—a heavy thumb on the scale in the critical area of expert testimony. Make no mistake, the use of experts continues to work major changes in the dynamics of litigation: Consider the law of privilege (see the proposed changes to Rule 26) and challenges to the role of private attorneys-general.

Here, the objection at issue was to specific causation, and no plain, indisputable, and complete disregard for the law can be shown. To the contrary, the record is crystal clear that the only evidence excluded was evidence proffered in support of specific causation. It was a well-tried case by competent lawyers

---

[10] 151 F.3d 269 (5th Cir. 1998) (en banc).

[11] Eymard v. Pan Am. World Airways, (In re Air Crash Disaster), 795 F.2d 1230 (5th Cir. 1986).

and a competent judge. The panel majority's frustration with this reality, its earlier efforts to reverse with a limitations bar followed by an effort to render on Daubert grounds, having failed, cannot be vented by clinging to defendants' throwaway argument addressed to the only objection made to evidence in the trial.

I speak only of the objective message given by the court's handling of this case. Whatever the impulses of individual judges, about which I am silent, that message is clear. To leave this opinion on the books unsettles the law of the circuit and delivers a gross injustice. There is a large policy debate in this country over the wisdom of providing a patient a claim against his doctor for negligence. Whatever the relative merits of the contending forces, there is an abandonment of judicial roles when judges allow their private view on jury trials and the divisive issues of health care to guide their judicial hand. The appearance cast by objective recitation of the history of this case is more than judges seeing a case as an opportunity to reach preferred social ends, it is an unwitting loss of place that disserves the judicial duty of disinterest, essential to the integrity of any court. Ms. Huss had a legal right to pursue her claim and a legal right to a jury trial. Not only has this court taken that away, it has volunteered suggestions to the district court that he should exclude the testimony of the plaintiffs' experts, this after reversing him for excluding evidence offered by the defendants.

This court has drifted to a seriously flawed view of the role of an en banc court. That half of the active judges would first refuse to consider the panel ruling that the case was barred by limitation and then years later refuse to consider en banc the panel majority's present ruling exposes the court's new vision. This is a court of error. It is not the Supreme Court. It does not have "discretion" to just "decline to rule." Unlike the Supremes, it does not have the

discretion to decide what it will decide, a powerful tool for implementing social policy.[12]  This is no lonely view.  It is shared by distinguished scholars.[13]  There can be no offhand dismissal such as—no great injustice here, the plaintiffs' science is weak, I think.  This leaves litigants at the mercy of panel roulette–the "law" being the unchartered and legally indefensible view of two judges.  There is sad irony in this court's handling of the limitations question.  The same judges prepared to hold that the Husses lost all their rights to sue when they did not file within two years of her diagnosis now, after nine years in federal court, hold that the case should start over, with a large suggestion that the trial judge should not let this case get to a jury again.  Trials of civil cases are disappearing in federal courts.  Litigation is fleeing the courts.  Much is being written about this phenomenon and why it is occurring.  To those students I say: read this case.

---

[12] As Justice Brennan described the importance to the Supreme Court function of the power to decide what to decide, "[it] is an indispensable and inseparable part of this entire process, and it cannot be curtailed without grave risk of impairing the very core of the extraordinary function of the Supreme Court."  William J. Brennan, Jr., The National Court of Appeals: Another Dissent, 40 U. CHI. L. REV. 473, 484 (1973).

[13] See generally Paul D. Carrington & Roger C. Cramton, Judicial Independence in Excess: Reviving the Judicial Duty of the Supreme Court, 94 CORNELL L. REV. 587 (2009); Daniel J. Meador, Reining in the Superlegislature: A Response to Professors Carrington and Cramton, 94 CORNELL L. REV. 657 (2009).

JENNIFER WALKER ELROD, Circuit Judge, with whom WIENER, BENAVIDES, and PRADO, Circuit Judges, join, dissenting:

I dissent for only the substantive legal reasons stated in Judge Higginbotham's dissent, and write separately to emphasize my understanding of the most compelling reasons for en banc rehearing.

Huss v. Gayden, 571 F.3d 442 (5th Cir. 2009), is no run-of-the-mill Daubert[1] case that might fade away as a precedent limited to its facts. It deserves our en banc consideration not because this kind of reversal is a true rarity in this circuit and every other—which it is—and not because the result did an injustice to these litigants—which it did, see id. at 462–67 (Higginbotham, J., dissenting)—but because it creates an irreconcilable conflict in our Daubert jurisprudence. What is a trial judge to do when he or she is persuaded that an expert witness is not qualified to render a specific-causation opinion because of the witness's deficient explanation or lack of specific experience? Facing comparable experts, Moore v. Ashland Chemical Inc., 151 F.3d 269 (5th Cir. 1998) (en banc), says that the trial judge may exclude, Tanner v. Westbrook, 174 F.3d 542 (5th Cir. 1999), says that the judge must exclude, and now Huss says that the judge must not exclude.

Somewhat thankfully, the panel opinion cannot have changed our law, for "where two previous holdings or lines of precedent conflict the earlier opinion controls and is the binding precedent in this circuit." Rios v. City of Del Rio, Tex., 444 F.3d 417, 425 n.8 (5th Cir. 2006).[2] Nonetheless, Huss will undoubtedly

---

[1] Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993).

[2] Moreover, "'no panel is empowered to hold that a prior decision applies only on the limited set of facts set forth in that opinion,' United States v. Smith, 354 F.3d 390, 399 (5th Cir. 2003), and a prior panel's explication of the rules of law governing its holdings may not generally be disregarded as dictum. Gochicoa v. Johnson, 238 F.3d 278, 286 n.11 (5th Cir. 2000)." Rios, 444 F.3d at 425 n.8.

confound both our litigants and our trial courts, who have neither the occasion nor the duty to resolve such contradictions in our jurisprudence. That task belongs to our court, and today we have failed.

Accordingly, I would rehear this case to resolve the apparent conflict between Huss and Tanner and Moore. Because the court does not, I respectfully dissent.