# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

September 7, 2011

No. 09-10837

Lyle W. Cayce
Clerk

THE ESTATE OF WILBERT LEE HENSON, deceased; BARBARA KAY
HENSON REED, Individually and on behalf of The Estate of Wilbert Lee
Henson; IWILLER G HENSON HENDRIX; WILMA LYNN HENSON;
SHELISHA RICHARDSON,

Plaintifs - Appellees

v.

SHERIFF THOMAS J. CALLAHAN, in his Official and Individual Capacity,

Defendant - Appellant

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 7:06-CV-44

Before DENNIS, OWEN, and SOUTHWICK, Circuit Judges..

LESLIE H. SOUTHWICK, Circuit Judge:[*]

The family of Wilbert Henson brought suit under 42 U.S.C. § 1983. They
claimed that constitutional violations by Sheriff Thomas J. Callahan and his
employees caused Henson's death while Henson was in pretrial detention.
Sheriff Callahan's motion for summary judgment based on qualified immunity
was denied. We REVERSE.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

No.  09-10837

## FACTUAL AND PROCEDURAL HISTORY

On Tuesday, November 23, 2004, Henson was arrested in Wichita County, Texas, on a bond forfeiture warrant for driving with a suspended license.  He was taken to the Wichita County Jail.  When he was booked, Henson complained he was having trouble breathing.  He told a nurse on duty that he had chronic obstructive pulmonary disease and emphysema, and that he recently had been treated for pneumonia.  Henson also said that he had been prescribed an antibiotic and an inhaler but had not filled the prescriptions.

The nurse gave Henson an antibiotic and an albuterol inhaler.  She also scheduled him for a doctor's call the next morning.  That night, though, Henson was transferred from the downtown jail to the annex facility several miles away.  When the same nurse learned of the transfer, she placed Henson on the next doctor's call at the annex.  That typically would have been one day later, but because that was Thanksgiving Day, no doctor's call was held.

At the annex, Henson's health declined.  He had difficulty breathing, and other inmates requested medical treatment for him.  Henson was visited once by a nurse; detention officers also telephoned nurses for medical advice.  He was given several albuterol breathing treatments.  Henson was moved to the medical isolation cell and observed by detention officers regularly, but his health continued to deteriorate.  He was never taken to the hospital or seen by a doctor.

On November 29, detention officers checked on Henson in his cell and found him short of breath and unable to walk or stand.  Henson said, "I'm done. I'm not gonna make it."  Shortly thereafter, Henson stopped breathing.  Officers administered CPR until an ambulance arrived.  Henson died at the hospital. The Tarrant County Medical Examiner reported the cause of death as chronic obstructive pulmonary disease.

Henson's relatives filed suit on March 27, 2006.  Relevant to this appeal are three of the individual defendants they identified.  The first is Kaye Krajca,

No. 09-10837

a nurse who had treated Henson at the jail and annex, who was sued in her individual capacity under Section 1983, among several state law claims. The district court found a genuine issue about whether Krajca displayed deliberate indifference to Henson's constitutional right to adequate medical care. On appeal, we granted Krajca qualified immunity, finding her actions indicative of negligence, gross negligence, or malpractice, but not rising to the level of deliberate indifference to Henson's rights. *See Henson v. Krajca*, No. 09-10881, 2011 WL __ (5th Cir. Aug. __, 2011) (unpublished).

Henson's relatives also sued Daniel Bolin, the doctor Wichita County contracted with to provide medical services at both jail facilities. The district court dismissed the claim that Dr. Bolin had directly violated Henson's constitutional rights. Dr. Bolin had never treated Henson, nor had he been notified of Henson's serious medical needs.

The court, though, identified disputed material facts about whether Dr. Bolin was liable under Section 1983 for his failure to supervise the nurses. There were also disputed facts regarding whether Dr. Bolin had maintained a custom of fear and intimidation that discouraged his staff from sending seriously ill inmates to the hospital. This distinct theory of Section 1983 supervisory liability applies to officials who implement, adopt, or maintain a custom or policy that is "so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." *Cozzo v. Tangipahoa Parish Council-President Gov't*, 279 F.3d 273, 289 (5th Cir. 2002) (quotation marks and citation omitted). Dr. Bolin's appeal to this court was dismissed for want of prosecution; he remains a defendant in the district court.

Sheriff Callahan was sued in his individual and official capacities under Section 1983. Like Krajca and Dr. Bolin, violations of the Fourth and Fourteenth Amendments were alleged, and damages were also sought under Texas's wrongful death and survivorship statutes. The district court resolved

3

No. 09-10837

the claims against the Sheriff similarly to those against Dr. Bolin. The court found a factual dispute as to whether the Sheriff failed to supervise Dr. Bolin and the nurses at the jail, and specifically whether the Sheriff was aware of and failed to halt Dr. Bolin's alleged intimidation that caused nurses to avoid sending inmates to the hospital for emergency medical care. There was also some evidence, the district court found, that such failures caused Nurse Krajca to avoid sending Henson to the hospital.

Sheriff Callahan filed this interlocutory appeal of the denial of qualified immunity, challenging both theories of supervisory liability.

## DISCUSSION

Our review of a refusal to grant summary judgment on the basis of qualified immunity is limited. *Kinney v. Weaver*, 367 F.3d 337, 346 (5th Cir. 2004) (en banc). We do not have jurisdiction over the district court's determination that there is a question of fact regarding whether a defendant engaged in the alleged conduct. *Id.* We do have authority to determine "whether the district court erred in assessing the legal significance of the conduct that the district court deemed sufficiently supported for purposes of summary judgment." *Id.* at 348 (citations omitted). This means we do not analyze whether a factual dispute is genuine, but only whether it is material. *Id.* at 347-48. This materiality review is conducted *de novo*. *Id.* at 349.

A plaintiff in a Section 1983 suit must show a violation of the Constitution or federal law and establish that the violator was acting under color of state law. *Brown v. Miller*, 519 F.3d 231, 236 (5th Cir. 2008). When qualified immunity is raised as a defense by the state actor, there will be no liability for actions that do "not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* (quoting *Kinney*, 367 F.3d at 349) (quotation marks omitted).

4

No. 09-10837

Therefore, when a defendant pleads qualified immunity, the burden shifts to the plaintiff to negate the defense by showing (1) that the official violated a constitutional right, and if so, (2) that the right was "clearly established" at the time of the relevant official conduct. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (citation omitted).

The district court denied Sheriff Callahan qualified immunity. An order denying qualified immunity is immediately appealable. *Bazan ex rel. Bazan v. Hidalgo Cnty.*, 246 F.3d 481, 490 (5th Cir. 2001).

To survive a defendant's motion for summary judgment, the plaintiff must provide evidence that would support a favorable jury verdict. *Id.* at 489. While "absolute proof" is not required, the plaintiff "must offer more than mere allegations." *Ontiveros v. City of Rosenberg, Tex.*, 564 F.3d 379, 382 (5th Cir. 2009) (quotation marks and citation omitted). We review the summary judgment record in the light most favorable to the non-moving party, drawing all factual inferences in his favor. *Bazan*, 246 F.3d at 489.

*A.     Violation of a Clearly Established Constitutional Right*

The Henson family alleges that Sheriff Callahan violated rights secured by the Fourteenth Amendment. That amendment requires that the "basic human needs" of pretrial detainees be met, including medical needs. *Hare v. City of Corinth*, 74 F.3d 633, 639 (5th Cir. 1996) (en banc).

The sheriff is responsible under Section 1983 only for his own actions and omissions. *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). Though Sheriff Callahan was not directly involved in the alleged constitutional deprivation, he still may be liable if:

> 1) the sheriff failed to train or supervise the officers involved; 2) there is a causal connection between the alleged failure to supervise or train and the alleged violation of the plaintiff's rights; and 3) the failure to train or supervise constituted deliberate indifference to the plaintiff's constitutional rights.

5

No. 09-10837

*Thompson v. Upshur Cnty., TX*, 245 F.3d 447, 459 (5th Cir. 2001) (citations omitted).[1] He may also be liable as a supervisor if he "implement[ed] a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." *Cozzo*, 279 F.3d at 289 (quotation marks and citation omitted); *see Callahan*, 623 F.3d at 256-57. Under this analysis, customs or widespread practices are akin to official policies. *Cozzo*, 279 F.3d at 289. This law was clearly established at the time of Henson's death.

The Henson family also discusses the nurses' alleged incompetence and their possible failures to diagnose and treat Henson properly. These facts are presented to support this theory of supervisory liability: the Sheriff allowed Dr. Bolin's custom or policy of nurse intimidation to persist, causing the nurses' deficient response to Henson's needs and ultimately Henson's death. They are not used separately to allege that the Sheriff's inadequate supervision alone, independent of Dr. Bolin's custom, was constitutionally inadequate or causally related to Henson's death.

### 1.    Failure to supervise

In the 1990s, Wichita County entered a contract with Dr. Bolin which required him to provide medical services and supervise the medical care provided by a staff of licensed vocational nurses who worked at the jail. Dr. Bolin still had these contractual duties in November 2004. The Henson family alleges that this system was not meeting the medical needs of inmates because Dr. Bolin intimidated the nurses from calling him or from sending seriously ill inmates to the hospital. The Henson family alleges that Sheriff Callahan knew of Dr. Bolin's custom or widespread practice of intimidation, knew that the nurses were not being properly supervised as a result of that custom, and did not meaningfully respond to that problem.

---

[1] The district court found no evidence to support the claim that the Sheriff could be liable for a failure to train. The decision is not challenged on appeal.

No. 09-10837

The Sheriff argues that there is no competent evidence that he had a duty to supervise the nurses. We disagree. The district court, in its opinion denying the Sheriff summary judgment, several times referred to evidence supporting a failure to supervise Dr. Bolin *and* the nurses. The court mentioned testimony by the Sheriff that he did not supervise the doctor or the nurses' provision of medical care,[2] and testimony by Dr. Bolin that he did not supervise the nurses except while he was working alongside them at the jail. The district court discussed evidence that the county, not Dr. Bolin, hired the nurses. The court also relied on a Texas statute that made the sheriff the keeper of the jail and responsible for the safety of the inmates. *See* Tex. Loc. Gov't Code § 351.041(a).

We reject the Sheriff's argument that he cannot be held liable for failure to supervise because he delegated all supervisory authority to Dr. Bolin. Because the Sheriff ultimately is responsible under Texas law for the safety of the prisoners, his delegation of supervision to the doctor could itself be a failure to supervise.

There also is evidence that the Sheriff took no steps to supervise the doctor after another inmate died four months before Henson. Whether the Sheriff failed to respond to that incident, which we describe in more detail below, creates another fact issue of whether the Sheriff failed to supervise. Therefore, the Henson family has presented evidence sufficient to avoid summary judgment as to whether there was a failure to supervise.

　　2.　　Causation of a constitutional injury

We now look for evidence of a causal connection between a failure to supervise and a violation of Henson's constitutional rights. *Thompson*, 245 F.3d at 459. The Henson family claims that but for Dr. Bolin's intimidation of the nurses, the nurses would have sent Henson to the hospital more quickly,

---

[2] Sheriff Callahan admitted that he considers himself a supervisor when the nurses are not engaged in providing medical services.

preventing his death. The district court dismissed several defendants supervised by the Sheriff, but retained Nurse Krajca and Dr. Bolin as persons potentially liable under Section 1983.

The causation prong explicitly requires an underlying constitutional violation before holding a supervisor liable. *See id.* This is true for each of the theories of supervisory liability remaining in this case. *See id.*; *Cozzo*, 279 F.3d at 289. "It is facially evident that this test cannot be met if there is no underlying constitutional violation.*" Rios v. City of Del Rio, Tex.*, 444 F.3d 417, 425 (5th Cir. 2006) (citation omitted). This requirement is also incorporated into the third prong of supervisory liability, deliberate indifference. *Id.* at 426-27; *see Mesa v. Prejean*, 543 F.3d 264, 274 (5th Cir. 2008) ("Proof of deliberate indifference generally requires a showing of more than a single instance of the lack of training or supervision causing a violation of constitutional rights." (brackets, quotation marks, and citation omitted)).

The operative principle, then, is that a supervisor cannot be liable under Section 1983 unless a subordinate employee has violated the plaintiff's constitutional rights – not just that a subordinate has acted negligently. These "plaintiffs must show that the supervisor acted, or failed to act, with deliberate indifference to violations of others' constitutional rights committed by their subordinates." *Wernecke v. Garcia*, 591 F.3d 386, 401 (5th Cir. 2009) (brackets, emphasis, quotation marks, and citation omitted); *see Rios*, 444 F.3d at 425-26 (collecting cases).[3]

---

[3] In a recent decision, the Supreme Court stated that deliberate indifference could be satisfied by the subordinate employee's tortious conduct. "Policymakers' continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action – the deliberate indifference – necessary to trigger municipal liability." *Connick v. Thompson*, 131 S. Ct. 1350, 1360 (2011) (quotation marks and citation omitted).

Though the court used the word "tortious," in context we conclude the Court meant an employee's commission of a constitutional tort under Section 1983. The language just one paragraph earlier in that opinion says policymakers can be liable when "a particular omission

No. 09-10837

In Nurse Krajca's appeal, which we also decide today, we determined her actions to be indicative of negligence, gross negligence, or malpractice, but not deliberate indifference. *Krajca*, 2011 WL __, at *__. Because Krajca did not violate Henson's constitutional rights, her conduct cannot serve as the predicate for the Sheriff's supervisory liability.

The remaining subordinate upon which to base the Sheriff's supervisory liability is Dr. Bolin. Dr. Bolin was denied qualified immunity by the district court and timely appealed here. He failed to pursue his appeal, though, and his case returned to the district court for further proceedings. We find no evidence, and the district court did not rest its opinion on such evidence, that the Sheriff did or failed to do anything as to Dr. Bolin that is relevant to inmate Henson, other than what we have discussed in this opinion regarding Nurse Krajca.

Consequently, whatever failures of care occurred at this jail that led to Henson's death, none of them constitute a constitutional violation for which Sheriff Callahan can be held liable under Section 1983.

We do not ignore the evidence in this record supporting that another inmate at the Wichita County jail, Jason Brown, died about four months before Henson. Brown came to the jail with a number of health problems. While in detention, he was vomiting blood. Nurses treated Brown, then placed him in the medical segregation cell. He was never taken to the hospital or seen by Dr. Bolin. In his reply brief, Sheriff Callahan states that the events leading up to the two deaths "are entirely unrelated and that any comparison of the two cases by this Court is unwarranted." For purposes of resolving the issues before us,

---

in their training program causes city employees to violate citizens' constitutional rights . . . ." *Id*. And the underlying harm in *Connick* was a *Brady* violation, not a tort in the usual sense of the word. *Connick* does not alter that Section 1983 supervisory liability arises only for constitutional violations committed by subordinates.

we will presume sufficient factual similarities to put the Sheriff on notice of problems regarding health care in the jail.

The difficulty, though, is there still was a need to introduce evidence that Henson's death was causally related to a constitutional violation by the Sheriff in failing to correct a problem of intimidation of nurses. We have held that such evidence was not introduced. Instead, those who the Henson family claims contributed to the death have not been shown to have committed constitutional violations, though they may have been negligent. We have already discussed why that is not enough.

Accordingly, there is no evidence that Brown's death would have put the Sheriff on notice of something relevant as to the Henson family's claim, and if so, whether the Sheriff "responded reasonably" to that notice. *Farmer v. Brennan*, 511 U.S. 825, 844 (1994). We have held that no evidence supports that an alleged reluctance to send seriously ill inmates to the hospital contributed to Henson's death. Consequently, the possible existence of a pattern does not satisfy all the evidentiary defects in this case.

Without a showing that a subordinate employee "refused to treat [Henson], ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs," there is no predicate constitutional violation upon which to base Sheriff Callahan's supervisory liability. *Domino v. Tex. Dept. of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001) (quotation marks and citations omitted). He is entitled to qualified immunity.

REVERSED and REMANDED for entry of judgment dismissing Sheriff Callahan from this suit.

09-10837

OWEN, Circuit Judge, concurring.

I join Judge Southwick's holding that Sheriff Thomas Callahan is entitled to qualified immunity. With respect, however, I do not join his opinion. I agree only that because there is no underlying constitutional violation upon which to base supervisory liability, Callahan is entitled to qualified immunity. The balance of Judge Southwick's opinion is unnecessary, and I would not reach the other issues that he considers. I also note that many of the reasons given by the district court for concluding that Callahan could be held liable under a theory of failing to supervise or train were subsequently rejected by our court in a related appeal.[1]

---

[1] *See Brown v. Callahan*, 623 F.3d 249 (5th Cir. 2010).

11

DENNIS, Circuit Judge, dissenting:

I respectfully dissent. In my view, there is evidence from which a reasonable jury could conclude that each of the three elements of supervisory liability is satisfied, and thus that the district court's denial of qualified immunity to Sheriff Callahan should be affirmed. First, I would conclude, for the reasons given by Judge Southwick, and which Judge Owen does not attempt to dispute, that there is competent summary judgment evidence showing that Sheriff Callahan had a duty to supervise the nurses.

Second, I disagree with the majority's conclusion, which is the primary basis for its granting qualified immunity to Sheriff Callahan, that there was no violation of Henson's constitutional rights by either of Sheriff Callahan's subordinates, Dr. Bolin or Nurse Krajca. The majority's determination that Nurse Krajca did not violate Henson's constitutional rights is based on its conclusion in *Henson v. Krajca*, 2011 WL ___ at *___, that there are no facts in the record from which a jury could reasonably infer that she was deliberately indifferent to his serious medical needs. However, for the reasons given in my dissent from that decision, I believe there is evidence from which a jury could reasonably infer that Nurse Krajca acted with deliberate indifference to Henson's serious medical needs, thereby violating his constitutional rights.

Finally, I would conclude that there is evidence from which a reasonable jury could find that Sheriff Callahan acted with deliberate indifference, a proposition which the majority does not attempt to dispute. The record in this case contains evidence that another inmate, Jason Brown, like Henson, came to the same jail and died while in custody, about four months before the events of this case. "During the 55 hours between Brown's book-in and his death, he informed the intake nurse of multiple serious medical problems, repeatedly vomited what appeared to be blood, complained

12

of feeling unwell, requested to be sent to the emergency room, and ultimately was non-responsive for extended periods of time." *Brown v. Callahan*, 623 F.3d 249, 252 (5th Cir. 2010). There was also evidence that "Nurse Krajca, who oversaw . . . Brown's treatment," stated to a detention officer regarding Brown, "[d]o you know what kind of ass-chewing I would get from Dr. Bolin if I sent [Brown] to the hospital in the good health that he is in?" *Id.* at 254 & n.2 (alterations in original). Brown received some treatment and then was placed in a medical segregation cell, where he died without ever being taken to the hospital or seen by Dr. Bolin. This information was included in a report of an investigation into the circumstances surrounding Brown's death, which was signed by Sheriff Callahan.

Thus, based on this evidence, a reasonable jury could conclude that Sheriff Callahan was on notice, by the time of Henson's arrival at the jail, that there was a problem of nurses, particularly Nurse Krajca, being reluctant to send very ill inmates to the hospital, and that his failure to address that problem constituted deliberate indifference.[1]

For these reasons, I would affirm the district court's denial of qualified immunity as to Sheriff Callahan.

---

[1] Sheriff Callahan argues, for the first time in his reply brief, that the circumstances surrounding the deaths of Brown and Henson "are entirely unrelated and that any comparison of the two cases by this Court is unwarranted," but offers no additional explanation for this assertion, which is offered only in the context of arguing that the evidence was inadmissible under the Federal Rules of Evidence. An argument raised for the first time in a reply brief should not be considered. *See United States v. Aguirre-Villa*, 460 F.3d 681, 683 n.2 (5th Cir. 2006).