# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

June 23, 2015

Lyle W. Cayce
Clerk

No. 14-31286

DENISE BAILEY, individually and on behalf of their deceased mother, Willie Nell Bullock; DANIEL JACKSON, individually and on behalf of their deceased mother, Willie Nell Bullock; RALPH JACKSON, individually and on behalf of their deceased mother, Willie Nell Bullock; DORIS J. USSIN, individually and on behalf of their deceased mother, Willie Nell Bullock;S LYNETTE BULLOCK, individually and on behalf of their deceased mother, Willie Nell Bullock; RICKY BULLOCK, individually and on behalf of their deceased mother, Willie Nell Bullock; THERESA BULLOCK JOHNSON, individually and on behalf of their deceased mother, Willie Nell Bullock,

   Plaintiffs - Appellants

v.

ARTHUR S. LAWSON, JR.; DEPUTY SCOTT VINSON; DEPUTY JAMES PRICE; DEPUTY RUSSELL LLOYD,

   Defendants - Appellees

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:12-CV-2795

Before WIENER, SOUTHWICK, and GRAVES, Circuit Judges.

No. 14-31286

PER CURIAM:*

In this civil rights action, the district court granted a motion for summary judgment filed by defendants Gretna, Louisiana Police Chief Arthur Lawson, Jr., and Officers Scott Vinson, James Price, and Russell Lloyd, (collectively, "Appellees"), on the basis of qualified immunity. Plaintiffs-Appellants Denise Bailey, Daniel Jackson, Ralph Jackson, Doris J. Ussin, Lynette Bullock, Ricky Bullock, and Theresa Bullock Johnson, individually and on behalf of their now-deceased mother, Willie Nell Bullock (collectively, "Appellants"), appeal the judgment of the district court. We affirm.

## I. Facts & Proceedings

At approximately 4:00 p.m., on November 16, 2011, several officers constituting the Special Response Team ("SRT") of the Gretna Police Department ("GPD"), entered Ms. Willie Nell Bullock's residence and executed a search and seizure warrant for narcotics. Ms. Bullock, who was sixty-six years old at the time, was sleeping. She had recently undergone an ileostomy/stoma procedure, and suffered from advanced cancer, high blood pressure, and diabetes. Although the parties dispute exactly what occurred during the execution of the warrant, surveillance video footage confirms that about two minutes after the SRT entered Ms. Bullock's residence, an officer escorted her outside and unfolded a chair on which she could sit. [1]

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] Appellants alleged in their complaint that unknown SRT officers pulled Ms. Bullock from her bed and threw her to the floor, which caused her face to strike the concrete, knocking out several teeth; that Officer Vinson kicked Ms. Bullock in her stomach; and that Ms. Bullock was required to lie face-down on the floor for over thirty minutes while SRT officers ignored her requests for medical treatment. The undisputed evidence presented to the district court on Appellees' motions for summary judgment contradicts Appellants' allegations concerning the search's duration, the officers' identities, and Ms. Bullock's injuries.

No. 14-31286

Approximately a year after the SRT executed the warrant at Ms. Bullock's residence, Appellants filed a § 1983 action in federal court. They claimed that the conduct of Officers Vinson, Lloyd, and Price during the execution of the warrant violated Ms. Bullock's Fourth Amendment right to be free from excessive force; and that Chief Lawson and Officer Vinson were liable in their supervisory capacities.[2]

In September 2014, Appellees filed two motions for summary judgment. In one motion, Appellees contested the veracity of Appellants' complaint. In the other motion, Appellees asserted that they were shielded by qualified immunity.[3]     The district court granted Appellees' motion for summary judgment on the basis of qualified immunity and denied as moot all other pending motions. Appellants timely appealed.

## II. Standard of Review

We review *de novo* a district court's grant of summary judgment on the issue of qualified immunity, applying the same standards as the district court.[4] "Summary judgment is proper when the pleadings and evidence demonstrate that no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law."[5]   When reviewing the district court's grant of summary judgment, we construe all facts and inferences drawn from them in

---

[2] Appellants' complaint also contained state law claims for negligence, assault, battery, negligent and intentional infliction of emotional distress, defamation, and slander, as well as §§ 1985 and 1986 claims, but the only claim that Appellants pursue on appeal is their § 1983 excessive force claim against Officers Vinson, Lloyd, and Price, as well as Chief Lawson.

[3] Two days after Appellees filed their motions for summary judgment, Appellants filed a motion for leave to file a supplemental and amended complaint adding Officers Scott Zemlik and Ryan Mekdessie as defendants, claiming that they had only recently learned that Officers Zemlik and Mekdessie had entered Ms. Bullock's residence during the execution of the warrant. The magistrate judge denied their motion, and Appellants do not appeal that ruling.

[4] *Curtis v. Anthony*, 710 F.3d 587, 593 (5th Cir. 2013) (per curiam) (citation omitted).

[5] *Id.* at 594 (quoting *Pluet v. Frasier*, 355 F.3d 381, 383 (5th Cir. 2004)) (internal quotation marks omitted).

No. 14-31286

the light most favorable to the non-moving party.[6] "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails . . . to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[7]

### III. Analysis

Section 1983 provides for a claim against one who, "under color of any statute, ordinance, regulation, custom, or usage, of any State" violates another's constitutional rights.[8] To state a claim under § 1983, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the violation alleged was committed by a person acting under color of state law.[9] We focus first on Appellants' claim that Officer Vinson's decision to order the use of the SRT to execute the warrant for Ms. Bullock's residence violated her right to be free from excessive force.

At the same time we consider Appellants' claim that Officer Vinson thus violated Ms. Bullock's right to be free from excessive force, we also consider Appellees' contention that they are immune from suit on the basis of qualified immunity. "[Q]ualified immunity protects government officials from civil damages liability when their actions could reasonably have been believed to be legal."[10] "When properly applied, [qualified immunity] protects all but the plainly incompetent or those who knowingly violate the law."[11] A plaintiff

---

[6] *Id.* (citation omitted).

[7] *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)) (internal quotation marks omitted).

[8] 42 U.S.C. § 1983.

[9] *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (citation omitted).

[10] *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011) (en banc) (citation omitted).

[11] *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2085 (2011) (citation and internal quotation marks omitted).

seeking to overcome qualified immunity must show that (1) the official violated a statutory or constitutional right and (2) the right violated was "clearly established" at the time of the challenged conduct.[12]  A court has discretion to decide which prong to consider first.[13]

## A.    Officer Vinson

Appellants contend that the district court erred in dismissing their excessive force claim against Officer Vinson on the basis of qualified immunity, asserting that his decision to use the SRT to execute the warrant violated Ms. Bullock's Fourth Amendment right to be free from excessive force and that this right was clearly established.  Satisfied that resolution of this issue turns principally on whether Officer Vinson's decision to use the SRT violated Ms. Bullock's right to be free from excessive force, we address that factor first.[14]

To maintain an excessive force claim against Officer Vinson, Appellants must adduce evidence of (1) an injury (2) which resulted from the use of force that was clearly excessive to the need, and (3) such excessive force was objectively unreasonable.[15]  When deciding this question, we look to whether "the totality of the circumstances justified the particular use of force."[16]  We do so by determining whether the force used is reasonable under the Fourth Amendment from the perspective of a reasonable officer on the scene at the time of the occurrence rather than with the clarity afforded by hindsight.[17]  At

---

[12] *Id.* at 2080 (citation omitted).

[13] *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).

[14] *See Pearson*, 555 U.S. at 242.

[15] *Ramirez v. Martinez*, 716 F.3d 369, 377 (5th Cir. 2013) (citation and internal quotation marks omitted).

[16] *Ramirez v. Knoulton*, 542 F.3d 124, 128 (5th Cir. 2008) (citation and internal quotation marks omitted).

[17] *Ramirez*, 716 F.3d at 377 (citation and internal quotation marks omitted).

core, we ask whether the officer's action was objectively reasonable in light of the facts and circumstances confronting them.[18]

We first assess injury. Appellants alleged that unknown officers threw Ms. Bullock to the floor, knocking out several teeth; that Officer Vinson kicked her in the stomach, the site of her recent colostomy procedure; and that the officers required her to lie face-down on the floor for more than thirty minutes during which period they ignored her requests for medical treatment. The undisputed evidence contradicts these claims of injury.[19]

Putting aside Appellants' failure to adduce evidence that Ms. Bullock suffered injury during the execution of the warrant, we turn to the next two prongs. Our inquiry is complicated by Appellants' theory that Officer Vinson's decision to order the use of the SRT, in and of itself, constituted excessive force. By pursuing this theory of liability, it is unclear whether Appellants maintain that Ms. Bullock suffered injuries as a result of Officer Vinson's decision to dispatch the SRT or that the decision itself violated her right to be free from excessive force. In any event, our review of the record evidence compels the conclusion that Appellants failed to adduce evidence that Officer Vinson's decision to order the use of the SRT was either clearly excessive to the threat posed by executing the search warrant or was objectively unreasonable.

Officer Vinson testified that he decided to use the SRT to execute the warrant for Ms. Bullock's residence based on his assessment of several factors, including (1) the criminal history of Appellant Ralph Jackson, an individual

---

[18] *Ramirez*, 542 F.3d at 128-29.

[19] Ms. Bullock's medical records indicate that she reported to the West Jefferson Medical Center emergency room a few hours after the SRT executed the warrant for her residence complaining that the SRT had injured her. The records indicate that her colostomy site was clean and dry with no signs of trauma and the reported injury to her mouth consisted of a 0.5 cm laceration to her inner upper lip. Video surveillance confirms that Officer Vinson did not enter her residence.

named in the warrant; (2) the difficulty of predicting the number of individuals who would be present in Ms. Bullock's residence; (3) discrete facts provided by a confidential informant; and, (4) the Bullock family's prior threats against the GPD.

Appellants challenge the veracity of the factors relied on by Officer Vinson in deciding to deploy the SRT.[20]  First, they claim that Appellant Ralph Jackson had no criminal history of violence involving weapons – only battery and domestic violence charges.  Because Appellants do not substantiate this claim with evidence, we cannot evaluate it.  Second, Appellants challenge Officer Vinson's contention that it was difficult to predict the number of persons in Ms. Bullock's home, claiming that her residence was under video surveillance.  Although Appellants are correct that the house was under video surveillance, it occurred at some distance from the house and surveilled only the front of the house.  Third, Appellants urge us to discount Officer Vinson's reliance on a confidential informant, claiming that he did so to avoid having to divulge facts that might have made his reliance on the threat assessment less reasonable.  As this contention is purely speculative, we must disregard it.

Finally, Appellants contend that Officer Vinson mischaracterizes the nature of the alleged "threats," claiming that they consisted only of the Bullock family reporting to the media that they would seek legal action were the GPD and Officer Vinson to harass them further.  This presents a closer question.

---

[20] Appellants also contend that the unreasonableness of his decision can be inferred from the SRT activation policy, which indicates that Officer Vinson's choice fell within the "selective enforcement operations" category rather than any specifically delineated situation. The SRT activation policy lists situations that are "representative of those which would require SRT activation" but notes these situations are "not inclusive of all situations where use of team is authorized."  Officer Vinson's decision did not fall outside the parameters of the SRT activation policy, as Appellants claim, but is properly categorized under the "selective enforcement operations" category.  Accordingly, the policy does not show that his decision to use the SRT was objectively unreasonable.

Officer Vinson did not provide much detail concerning the alleged "threats," nor could he provide the names of the individuals that he claims threatened GPD officers.  But, based on Appellants' failure to adduce any other contrary evidence that would establish a dispute of material fact as to the underlying reasonableness of Officer Vinson's decision, we conclude that this dispute is not material.

Based on the totality of the circumstances, Officer Vinson's decision to deploy the SRT to execute the search warrant for Ms. Bullock's residence did not constitute force excessive to the need, nor was it objectively unreasonable.[21] Because Appellants failed to adduce any credible evidence that Ms. Bullock was subjected to excessive force, the district court correctly held that Officer Vinson did not violated Ms. Bullock's constitutional right, entitling him to qualified immunity.[22]

## B.     Remaining claims

Appellants' remaining contentions on appeal are also without merit. Appellants themselves concede that they failed to adduce any evidence that Officers Price or Lloyd ever entered Ms. Bullock's residence or interacted with her, making the district court's grant of summary judgment in their favor proper.  And, because we conclude that Officer Vinson is entitled to qualified immunity from Appellants' claim that he violated Ms. Bullock's right to be free

---

[21] We look only to the objective reasonableness of the use of force, without regard to the officer's underlying intent or motivation.  *See Poole v. City of Shreveport*, 691 F.3d 624, 638 (5th Cir. 2012) (citation and internal quotation marks omitted).

[22] The district court held that Officer Vinson was entitled to qualified immunity on the basis that Appellants adduced no evidence that he entered Ms. Bullock's residence or interacted with her.  Because Appellants contend that he violated Ms. Bullock's right to be free from excessive force by virtue of ordering the use of the SRT to execute the search warrant, not by his entering her residence, we affirm the district court's holding that he is entitled to qualified immunity but on a different ground than that expressed by the district court.  *See QBE Ins. Corp. v. Brown & Mitchell, Inc.*, 591 F.3d 439, 443 (5th Cir. 2009) (citation omitted) ("We may affirm summary judgment on any basis raised below and supported by the record.").

No. 14-31286

from excessive force, his conduct cannot serve as the predicate for Chief Lawson's or his own supervisory liability for failure to train or supervise.[23] The district court did not err in entering summary judgment on their behalf regarding Appellants' supervisory liability claims.

## IV. Conclusion

The judgment of the district court is, in all respects, AFFIRMED.

---

[23] Supervisory liability requires that the defendant (1) fails to train or supervise the officers involved, (2) a causal connection exists between the alleged failure to supervise or train and the alleged violation of the plaintiff's rights, and (3) the failure to train or supervise constitutes deliberate indifference to the plaintiff's rights. *Thompson v. Upshur Cty.*, 245 F.3d 447, 459 (5th Cir. 2001) (citations omitted). Because Appellants have not adduced evidence that Officer Vinson violated Ms. Bullock's constitutional rights, there is not an underlying constitutional violation and therefore supervisory liability cannot exist. *See Whitley*, 726 F.3d at 648 (citing *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 467 (5th Cir. 2010)); *see also Estate of Henson v. Callahan*, 440 F. App'x 352, 357-58 (5th Cir. 2011). Moreover, Appellants themselves concede that they were unable to adduce any evidence that would establish a pattern of prior conduct indicating that either Officer Vinson or Chief Lawson were deliberately indifferent to the risk of constitutional injury posed by using the SRT to execute the warrant for Ms. Bullock's residence. *See Rios v. City of Del Rio*, 444 F.3d 417, 427 (5th Cir. 2006) (showing deliberate indifference "generally requires that a plaintiff demonstrate at least a pattern of similar violations" (citation and internal quotation marks omitted)).